## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | |
|---|---|
| OPTIO RX, LLC & CRESTVIEW PHARMACY, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> CRESTVIEW CITY PHARMACY, INC., JENNIFER RESHAY DENSMAN, CHRISTOPHER NEIL DENSMAN & BRYAN HENDERSON, <br><br> Defendants, <br><br> AMANDA DAVEY, CLAUDIA BARNETT, KARI WAITES, VICTORIA BALLARD, MORGAN MEEKS, KYNDALL BARBER & ELLEN STAFFORD, <br><br> Nominal Defendants. | Case No. |

## VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiffs, OPTIO RX, LLC and Crestview Pharmacy, LLC ("Crestview Pharmacy") (collectively, the "Company" or "OptioRx"), by and through their undersigned counsel, and for their Verified Complaint for Injunctive and Other Relief (the "Complaint") against Defendants Crestview City Pharmacy, LLC ("Crestview City Pharmacy"), Jennifer Reshay Densman, Christopher Neil Densman and Bryan Henderson (collectively, the "Individual Defendants"), and with Amanda Davey, Claudia Barnett, Kari Waites, Victoria Ballard (nee Mullins),

Morgan Meeks, Kyndall Barber and Ellen Stafford (collectively, the "Nominal Defendants"), allege as follows:

## NATURE OF THE CASE

1.     As fully described below, Plaintiff OptioRx operates a nationwide pharmacy with specialized compounding pharmacy locations throughout the United States, including Plaintiff Crestview Pharmacy.  Crestview Pharmacy has been in existence for more than 20 years and has longstanding relationships with prescribing physicians and customers who rely on Crestview Pharmacy to meet their specialty compounding and other prescription drug needs.

2.     Defendants Jennifer Reshay Densman ("Reshay Densman" or "Mrs. Densman"), Christopher Neil Densman ("Neil Densman" or "Mr. Densman"), Bryan Henderson ("Bryan Henderson" or "Mr. Henderson") (collectively, the "Individual Defendants"), together with and on behalf of their newly established competing pharmacy, Defendant Crestview City Pharmacy, Inc. ("Crestview City Pharmacy" or collectively with the Individual Defendants, "Defendants"), have engaged in a systematic, multipronged campaign to unfairly compete with OptioRx's Crestview Pharmacy, with the ultimate goal of crippling OptioRx's business and unfairly profiting from their misconduct, all while actively employed by OptioRx.  Further, since leaving their employment, the Individual Defendants have continued to unfairly compete with OptioRx in violation of Bryan

Henderson's covenants not to compete and/or solicit.

3. Defendants misconduct has included: (1) forming a competing pharmacy under a nearly identical trade name in violation of OptioRx's federal and common law trademark rights, (2) misappropriating and disclosing OptioRx's trade secrets in furtherance of their competing business, (3) breaching and/or tortiously interfering with Bryan Henderson's Employment Agreement with Crestview Pharmacy, and (4) orchestrating a large-scale conspiracy to unfairly compete with OptioRx, while still employed by the Company, by using OptioRx's confidential and proprietary trade secret information to unlawfully solicit OptioRx's customers and employees to, respectively, cease doing business with or resign from their employment with OptioRx. Most recently, Defendants have contacted OptioRx's top prescribers to solicit their business and disparage OptioRx in further violation of (and tortious interference with) Bryan Henderson's Employment Agreement covenants.

4. In light of this misconduct, OptioRx and Crestview Pharmacy are forced now to bring this action, as Defendants unlawful behavior is in direct violation of OptioRx's and Crestview Pharmacy's contractual, statutory, and common law rights against unfair competition, which has caused and threatens to continue to cause significant damage to OptioRx's business, and, as such, must be enjoined.

## PARTIES

5.     OptioRx is a Delaware limited liability company with its principal place of business in Oakbrook, Illinois.  OptioRx is a national pharmacy with locations across the United States specializing in compounding, hospice, retail, home infusion and fertility.

6.     Crestview Pharmacy is a Florida limited liability company based in Crestview, Florida, which offers specialty compounded medications, hormone consults, and medication therapy management services as well as regular prescription filling.  Each of the Individual Defendants previously were employed at Crestview Pharmacy.

7.     Defendant Crestview City Pharmacy is a newly-formed Florida corporation with its principal place of business located at 310 S Ferdon Blvd, Crestview, Florida 32536.  Crestview City Pharmacy was incorporated on or about October 17, 2022, and has been licensed to operate in the State of Florida since February 10, 2023.

8.     Reshay Densman is an individual who previously was employed at Crestview Pharmacy and, during her employment with OptioRx, resided in Baker, Florida.  Mrs. Densman is a former OptioRx employee and the President of Crestview City Pharmacy.

9.     Neil Densman is an individual who previously was employed at

Crestview Pharmacy and, during his employment with OptioRx, resided in Pace, Florida.  Mr. Densman is married to Reshay Densman.

10.     Bryan Henderson is an individual who previously was employed at Crestview Pharmacy and, during his employment with OptioRx, resided in Pace, Florida.

11.     Nominal Defendants Amanda Davey, Claudia Barnett, Kari Waites, Victoria Ballard (nee Mullins), Morgan Meeks, Kyndall Barber and Ellen Stafford are individuals who previously were employed by OptioRx at the Crestview Pharmacy.

## JURISDICTION AND VENUE

12.     The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this matter involves, *inter alia*, federal claims under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, and the Lanham Act, 15 U.S.C. § 1125 *et. seq.*

13.     This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because those claims are related to the federal claims and form part of the same case and controversy, transaction or occurrence.

14.     Defendant Crestview City Pharmacy is subject to the personal jurisdiction of this Court pursuant to Fla. Stat. § 48.193(1)(a), because Crestview City Pharmacy has an office in Okaloosa County, Florida, and it has conducted,

engaged in and carried out a business venture within the State of Florida. Defendant Crestview City Pharmacy additionally is subject to the personal jurisdiction of this Court under Fla. Stat. § 48.193(1)(a)(2), as it has committed tortious acts within the state.

15.     Reshay Densman is subject to the personal jurisdiction of this Court pursuant to Fla. Stat. § 48.193(1)(a), because she is a resident of, and present in, Okaloosa County, Florida.  Mrs. Densman is additionally subject to the personal jurisdiction of this Court under Fla. Stat. § 48.193(1)(a)(2), as she has committed tortious acts within the state.

16.     Neil Densman is subject to the personal jurisdiction of this Court pursuant to Fla. Stat. § 48.193(1)(a), because he is a resident of, and present in, Santa Rosa County, Florida.  Mr. Densman additionally is subject to the personal jurisdiction of this Court under Fla. Stat. § 48.193(1)(a)(2), as he has committed tortious acts within the state.

17.     Bryan Henderson is subject to the personal jurisdiction of this Court pursuant to Fla. Stat. § 48.193(1)(a), because he is a resident of, and present in, Santa Rosa County, Florida.  Mr. Henderson additionally is subject to the personal jurisdiction of this Court under Fla. Stat. § 48.193(1)(a)(2), as he has committed tortious acts within the state.

18.     Amanda Davey, Claudia Barnett, Kari Waites, Victoria Ballard (nee

Mullins), Morgan Meeks, Kyndall Barber and Ellen Stafford have been named as Nominal Defendants and are subject to the personal jurisdiction of this Court of this Court under Fla. Stat. § 48.193(1)(a)(2) because, though they have not been formally named as Defendants as of the time of filing this Complaint, Plaintiffs are informed and believe that they may have been complicit in the tortious acts complained of below and, in all events, their interests—including with respect to their current or future employment by Defendant Crestview City Pharmacy—will be affected if injunctive relief is granted against the Defendants as requested herein.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District. Defendants either live and work in this District, conducted business in this District, misappropriated and used Plaintiffs' trade secrets in this District, solicited Plaintiffs' customers and employees from this District, and engaged in tortious conduct within this District.

## BACKGROUND FACTS

20.     OptioRx is a national pharmacy with locations across the United States. OptioRx's pharmacies specialize in compounding custom medications for humans and animals, fertility products, home infusion, and hospice.  OptioRx operates nationally, serving 48 states and Washington, D.C.

21.    Because of the nature of its business, OptioRx maintains key client relationships with medical prescribers and customers who require the specialty medications that OptioRx's compounding pharmacies are able to offer.  In this regard, OptioRx's clients rely upon and value the specialized services that OptioRx is able to provide them.

22.    OptioRx has a legitimate and important business interest in its relationships with its clients, including its prescribing physicians and customers requiring medication, which are maintained in large part through the use of its confidential and proprietary information.  Because of its successful maintenance of its client relationships, as well as its knowledge of its clients' needs, OptioRx has long-term relationships with its clients and relies on substantial repeat business from these clients.

23.    OptioRx has invested and continues to invest considerable resources to develop information, methods and techniques to: (a) identify and market to prescribing physicians and customers regarding the services available through OptioRx's network of pharmacies; (b) identify key individuals responsible for prescribing the myriad of medications and services offered by OptioRx; (c) maintain, develop and nurture business relationships with those entities and individuals; (d) learn clients' medical and service needs; (e) develop innovative solutions to meet clients' prescription drug needs, including, but not limited to,

developing proprietary methods and formulations for the compounding of medications; and (f) set pricing to attract and maintain clients.

24.    The information described in Paragraph 23 is valuable, confidential, and proprietary to OptioRx, and is not generally known in the public domain.

25.    Individuals employed by OptioRx—particularly, pharmacists and technicians such as the Individual Defendants—become inexorably and intimately knowledgeable regarding OptioRx's confidential information concerning medical prescribers and their patients including, *inter alia*, the identities of OptioRx's medical prescriber clients and customers requiring medication, client marketing strategies, client business needs and preferences, client contact information, customer medication needs, and other internal resources OptioRx has or may have to assist these clients and customers, such as marketing, sales and development activities relating to attracting or retaining OptioRx's medical prescriber clients and individual customers. Additionally, Crestview Pharmacy employees—including the Individual Defendants—become intimately knowledgeable regarding the confidential and proprietary methods and formulations by which Crestview Pharmacy compounds medications to meet customer dosing requirements.

26.    The aforementioned information has significant economic value to OptioRx and would be of significant economic value to competitors in the specialty compounding and retail pharmacy space.

27.     To protect its legitimate business interests, including with respect to the aforementioned proprietary information, OptioRx has implemented a Confidentiality of Business Information policy, which states that the "general business affairs of OptioRx's customers and clients should not be discussed with anyone outside of the organization except as required in the normal course of business."  That policy further states that Confidential Information covered under the policy includes, but is not limited to, "PHI (protected health information), inventions, discoveries, improvements, processes, formulas, software, apparatus, equipment, methods, trade secrets, research, client data and information or cost or purchases of Client's products or services [which] should not be disclosed to any party without the appropriate consent of the OptioRx."  *See* Exhibit A.

28.     In furtherance of its Confidentiality of Business Information policy, OptioRx further implemented a requirement that, as a condition of continued employment, employees at each of its pharmacies enter into a Non-Solicitation, Non-Disclosure and Invention Assignment Agreement (the "Non-Disclosure Agreement") with OptioRx.  The Non-Disclosure Agreement was rolled out to employees at Crestview Pharmacy in the fall of 2022.

29.     In addition to rolling out its Non-Disclosure Agreement to employees, OptioRx took (and still takes) supplementary measures to guard against the unauthorized disclosure of its confidential information.  For example, OptioRx (a)

uses password-protected computers and online accounts, (b) limits access to its network and physical offices to authorized personnel, and (c) restricts employee access to communications, information and documents not germane to the employee's job duties.

**OptioRx's Acquisition and Operation of Crestview Pharmacy**

30.    Crestview Pharmacy has been in operation, in Crestview, Florida, since at least May 15, 2001.   The pharmacy originally was incorporated as Crestview Pharmacy, Inc., by its former owners, Bryan Henderson, as well as Hal Densman and Mitchell Spreier.

31.    On December 6, 2018, OptioRx, through its newly formed subsidiary, Crestview Pharmacy, LLC, acquired Crestview Pharmacy from Mssrs. Henderson, Densman, and Spreier pursuant to a Membership Interest Purchase Agreement, and continued operating the business using the longstanding and well known tradename: Crestview Pharmacy.

32.    In the more than 20 years that Crestview Pharmacy has been in existence, it has developed a reputation as the go-to pharmacy in the immediate area (and regionally) for compounding and specialty medications.   Indeed, Crestview Pharmacy historically has serviced customers not only in Florida, but also in a number of states through the southeast and central United States, regularly shipping prescriptions across state lines to individuals in the 38 states which

Crestview Pharmacy historically has been licensed to service.  As a result of its extended history in the compounding space, Crestview Pharmacy has developed long-term business relationships with more than fifty prescribing physicians who routinely direct their customers to fill prescriptions at Crestview Pharmacy.  These relationships currently are in jeopardy due to Defendants unlawful actions.

33.     OptioRx has over the years devoted substantial time, effort, and resources to promoting its Crestview Pharmacy brand over the years, and, as a result, OptioRx has developed strong trademark rights in the Crestview Pharmacy designation.  In furtherance of those efforts, to promote the Crestview Pharmacy brand, OptioRx employs a Compounding Sales Representative, whose primary job duty is to travel throughout the region and meet with prescribing physicians to promote the compounding services offered by Crestview Pharmacy.  As a result of these concerted efforts, the Crestview Pharmacy designation has, in fact, acquired distinctiveness in the minds of the relevant prescribers, customers and purchasing public, who have come to trust and rely on the services and goods offered by Crestview Pharmacy.

**The Individual Defendants' Respective Employment with OptioRx**

### *Bryan Henderson*

34.     Following OptioRx's acquisition of Crestview Pharmacy, Bryan Henderson agreed to remain employed as a Pharmacist.  In his role as Pharmacist,

Mr. Henderson was responsible for overseeing operations of Crestview Pharmacy, managing pharmacy technicians, consulting with prescribing physicians regarding the required dosage for prescriptions, ensuring that prescriptions were being filled for customers in a timely and safe manner.

35.     In his role as Pharmacist, Mr. Henderson regularly interacted with, and became intimately familiar with the prescribing physicians who regularly utilized Crestview Pharmacy to fill specialty compounding prescriptions and to the customers who came to rely on Crestview Pharmacy provide essential prescription drug medications.  Mr. Henderson further obtained confidential and proprietary information concerning OptioRx's prescribing physicians, customers requiring medication, and OptioRx's business operations and financial information, including, *inter alia*, with respect to the business, marketing, and financial arrangements of OptioRx, its business partners, and customers.

36.     Following OptioRx's acquisition of Crestview Pharmacy, and as a condition to his continued employment, Mr. Henderson entered into an Employment Agreement with Crestview Pharmacy dated December 13, 2018. *See* Exhibit B.

37.     In the Employment Agreement, Mr. Henderson recognized and acknowledged that he would have access to Confidential Information (as defined in the Employment Agreement) and acknowledged that he would not have had access

to such Confidential Information but for his employment with the Company. Exhibit B, ¶ 6(a). Mr. Henderson further acknowledged that the Company invests considerable resources, time and energy in developing and maintaining its Confidential Information. *Id.* at ¶ 6(b). Accordingly, Mr. Henderson agreed to disclose Confidential Information solely to Company employees who have a "need to know" such Confidential Information to carry out their job duties. *Id.*

38.    In the Employment Agreement, Mr. Henderson agreed not to compete unfairly against Crestview Pharmacy during a defined "Restricted Period." Specifically, Paragraph 7 of the Employment Agreement provides that Mr. Henderson shall "not engage in, assist, or have any interest in a Competitive Business" for a period of five (5) years following the termination of his employment with the Company for any reason. Exhibit B, ¶¶ 7, 8(b)(iii). "Competitive Business" is defined in the Employment Agreement as "any person or entity, other than the Company and its Affiliates, that is engaged in the business of the Company or its Affiliates." *Id.* at ¶ 8(b)(i).

39.    The Employment Agreement also contains a separate non-solicitation provision that prohibits Mr. Henderson from, directly or indirectly, assisting any other person or entity in a competitive manner to "(A) solicit, attempt to solicit, pursue, sell to, attempt to sell to, accept business from, accept any remuneration with respect to, or otherwise provide or agree to provide services to any Customer;

or (B) assist, request, induce, or influence in any way any Competitive Business to solicit, attempt to solicit, sell to, attempt to sell to, or accept business from, or otherwise agree to provide services to, any Customer." Exhibit B, ¶ 8(a)(i).

40.     Mr. Henderson further covenanted not to, directly or indirectly, "[r]ecruit, solicit, or otherwise induce or influence any employee, of the Company or its Affiliates to diminish, discourage the development of, discontinue, or otherwise adversely affect their relationship with the Company or its Affiliates." Exhibit B, ¶ 8(a)(ii).

41.     Mr. Henderson also agreed in the Employment Agreement that "[a]t all times during and following [his] employment with the Company, [Mr. Henderson] will not make any statement that is intended to or could be reasonably expected to disparage or reflect unfavorably on the Company, its Affiliates, or their services or goods." Exhibit B, ¶ 10.

42.     Mr. Henderson agreed and stipulated that the covenants contained in the Employment Agreement "are fair and reasonable in all respects and necessary to protect the Company's and its Affiliates' legitimate business interests, and will not prevent [Mr. Henderson] from becoming gainfully employed, [or] earning a living in [his] chosen profession." Exhibit B, ¶ 6(h).

43.     In the Employment Agreement, Mr. Henderson also agreed that in the event he "actually breaches or threatens breach of this Agreement, then the

Company and its Affiliates will be entitled, in addition to any other available remedies (including, but not limited to, liquidated damages), to injunctive relief (without bond) to enjoin [Mr. Henderson], and all others acting in concert with [him], from breach or threatened breach of such covenants." Exhibit B, ¶ 13(a).

44.    Mr. Henderson would not have been employed by OptioRx nor have been granted access to OptioRx's confidential information, customers and clients but for his agreement to abide by the terms of the Employment Agreement.

### *Reshay Densman*

45.    Immediately following OptioRx's acquisition of Crestview Pharmacy, Rehsay Densman transitioned into the role of General Manager/Registered Pharmacist for Crestview Pharmacy.   In this regard, Mrs. Densman was responsible for overseeing all operations at Crestview Pharmacy, managing all personnel, consulting with prescribing physicians about the required dosage for prescriptions, ensuring that prescriptions were being filled for customers in a timely and safe manner, and ensuring compliance with state and federal regulatory requirements.

46.    In her role as General Manager/Pharmacist in Charge, Mrs. Densman regularly interacted with, and became intimately familiar with the prescribing physicians who regularly utilized Crestview Pharmacy to fill specialty compounding prescriptions and to the customers who relied on Crestview

Pharmacy to fill those essential prescriptions.

47.     As a result of her employment with OptioRx, Mrs. Densman further obtained confidential and proprietary information concerning OptioRx's prescribing physicians, customers requiring medication, and OptioRx's business operations and financial information, including, *inter alia*, with respect to the business, marketing, and financial arrangements of OptioRx, its business partners and customers.

48.     In addition to being married to Neil Densman, Mrs. Densman is the daughter-in-law of Crestview Pharmacy's former owner, Hal Densman.

### *Neil Densman*

49.     Immediately following OptioRx's acquisition of Crestview Pharmacy, Neil Densman was hired by OptioRx as a Lead Pharmacy Technician.   In this capacity, Mr. Densman was responsible for: (a) managing the laboratory where Crestview Pharmacy manufactured and/or filled the prescriptions for the specialty compounded and other medications customers required, (b) supervising the work of other pharmacy technicians, and (c) ensuring that the laboratory and its equipment were well maintained at all times.

50.     As Lead Pharmacy Technician, Mr. Densman also had access to confidential patient health information concerning customer medications, existing medical conditions, and contact information.

51.     Mr. Densman is married to Reshay Densman and is the son of Crestview Pharmacy's former owner, Hal Densman.

## Defendants' Conspiracy to Establish a Competing Pharmacy

52.     In recent weeks, OptioRx has learned of a broad conspiracy involving a number of employees at Crestview Pharmacy to establish a nearby competing pharmacy.   Upon information and belief, the Individual Defendants are the ringleaders of this conspiracy and actively have been working together for the last several months to undermine OptioRx's business operations at Crestview Pharmacy by, *inter alia*, soliciting employees, prescribing physicians and customers to transfer their business away from OptioRx to their competing business.

53.     In particular, OptioRx has learned that on or about October 17, 2022, the Individual Defendants, filed article of incorporation for their new business with the State of Florida.   Specifically, the Individual Defendants incorporated Crestview City Pharmacy, Inc., as a domestic Florida corporation, and listed Reshay Densman as the registered agent and President of the corporation.  Since at least that time, the Defendants have been working in concert to compete with OptioRx and its Crestview Pharmacy, all while actively employed by OptioRx.

54.     At or around the same time that the Individual Defendants formed their competing business, OptioRx made the decision to introduce standard Non-

Soliciation, Non-Disclosure and Invention Assignment Agreements (the "Non-Disclosure Agreement") to employees at Crestview Pharmacy, and OptioRx's other pharmacies, in order to ensure greater protection for OptioRx's confidential and proprietary business information and further protect patient health information.

55.    Employees were asked to sign the Non-Disclosure Agreement as a condition of their continued employment.   However, rather than perform their duties as managers by encouraging employees to sign off on the Non-Disclosure Agreement, the Individual Defendants coerced employees to not sign the Non-Disclosure Agreement and instead leave their employment with OptioRx to join them at their new competing pharmacy.   Specifically, the Individual Defendants directed a number of Crestview Pharmacy employees to refrain from signing their respective Non-Disclosure Agreements until those employees had received legal advice from Mrs. Densman and her attorney.   Based on the Individual Defendants' actions, most of the employees at Crestview Pharmacy ultimately refused to sign the Non-Disclosure Agreement.

56.    The Individual Defendants further obtained a license to operate Crestview City Pharmacy from the State of Florida (License No. PH34362) on or about February 10, 2023.   Importantly, on that license, the Individual Defendants listed a current OptioRx employee, Emily Blackmon, as the Pharmacy Manager for Crestview City Pharmacy, and identified a business address located at 310 S.

Ferdon Blvd, Crestview, Florida 32536. Thus, while employed by OptioRx, the Individual Defendants solicited away an OptioRx employee to run their competing pharmacy and established a competing business with a similar name just two miles away from Crestview Pharmacy. On information and belief, Crestview City Pharmacy offers or will offer the same or similar pharmacy goods and services currently offered by OptioRx at Crestview Pharmacy.

57. In the time since the Individual Defendants obtained their business license from the State of Florida, the Individual Defendants' efforts to unfairly compete with OptioRx have exacerbated.

58. For instance, this spring, Reshay Densman sent a number of emails from her work email address to her personal email address, containing confidential and proprietary trade secret information regarding OptioRx's business strategies, financial reporting information, and medical prescriber names and other confidential financial information. These emails were sent using OptioRx computer software in furtherance of the Individual Defendants' conspiracy to start a competing business and after Mrs. Densman formally announced her intent to resign from her employment with OptioRx in February 2023. For instance, on or about April 14, 2023, Mrs. Densman forwarded to her personal email a Crestview Pharmacy email containing a list of its top medical providers and their respective financial information. She likewise forwarded emails containing OptioRx's

confidential financial statements on or about March 9, 2023 and April 3, 2023. Similarly, Mrs. Densman further used her work email on or about April 6, 2023, to register Crestview City Pharmacy as a member of a network of independent pharmacies (EpicRx).  OptioRx has reason to believe that Mrs. Densman shared the foregoing confidential business records with the other Individual Defendants in furtherance of their competing business, Crestview City Pharmacy.

59.    For his part, Bryan Henderson has, directly or indirectly, engaged in effecting, or otherwise assisted in the creation of the Individual Defendants' competing business, including by advising Mrs. Densman concerning the formation of Crestview City Pharmacy and her resignation from OptioRx.  Instead, Mr. Henderson took steps to intentionally harm OptioRx's business by refusing to cooperate with OptioRx managers regarding the transfer of certain Company accounts necessary for the business to operate.  Mr. Henderson further disparaged OptioRx's business and management to anyone who would listen, including to other Crestview Pharmacy employees, prescribing physicians and other individuals who had sold their respective pharmacies to OptioRx, by falsely claiming that OptioRx had breached its obligations to pay him certain funds pursuant to a seller note, despite his knowledge that OptioRx at all times had acted in accordance with the parties' agreement with respect to its obligations to pay him certain funds.  Mr. Henderson continues to disparage OptioRx to third parties despite his

administrative leave.   Additionally, Mr. Henderson repeatedly has threatened OptioRx managers and employees, in the hopes of directing OptioRx's key prescribing physicians to do business with elsewhere—i.e., to Crestview City Pharmacy—threats which it appears he has followed through with.

60.   For his part, Neil Densman worked closely his wife, Reshay Densman, to build out and establish Crestview City Pharmacy, while actively employed by OptioRx.   He further conspired with Mrs. Densman and Mr. Henderson to disparage OptioRx and its management to other employees and to solicit those employees to join the Individual Defendnats at Crestview City Pharmacy.   Mr. Densman also   intentionally disregarded his Lead Pharmacy Technician responsibilities in managing the compounding laboratory in order to harm operations at Crestview Pharmacy, resulting in the delay of patient care, and the decrease in quality and efficiency of the pharmacy's operations.   Specifically, Mr. Densman disregarded his duties to ensure that the laboratory, which he was responsible for running, was maintained in proper working order, including by failing to (1) repair and/or ensure that laboratory equipment operated properly, (2) ensure that the laboratory was maintained in accordance with OptioRx's cleanliness standards, and (3) ensure that the proper levels of ingredients, supplies and inventory were on hand to satisfy existing and future client needs.

61.   In addition to the foregoing misconduct, while aware of Mr.

Henderson's Employment Agreement and restrictive covenant obligations to OptioRx, Mrs. Densman and her husband, Neil Densman, took steps to intentionally interfere with Mr. Henderson's contractual obligations to not compete with or solicit employees on behalf of their competing business. Specifically, Mr. and Mrs. Densman sought advice from Mr. Henderson regarding the formation of Crestview City Pharmacy and, Ms. Densman's resignation from OptioRx, all while conspiring with Mr. Henderson to actively compete with OptioRx, during their respective employment, conduct both Mr. and Mrs. Densman knew violated Mr. Henderson's restrictive covenant obligations to not compete with OptioRx. Such competitive activity was undertaken as part of a broader, unjustified conspiracy to harm OptioRx's business operations at Crestview Pharmacy.

62.     Indeed, while actively employed by OptioRx in positions of trust and confidence, the Individual Defendants solicited and encouraged at least nine (9) of OptioRx's then active employees at the Crestview Pharmacy, including, but not limited to, the Nominal Defendants, to resign from their employment with OptioRx *en masse* and to immediately accept competing employment with Crestview City Pharmacy. Indeed, on April 12, 2023, Nominal Defendant Claudia Barnett admitted that she was considering going to work at Crestview City Pharmacy, underscoring that solicitations had taken place.

63.     The Individual Defendants further sought to intentionally sabotage

operations at Crestview Pharmacy by neglecting their collective job duties in order to (1) ensure that Crestview Pharmacy's lab was maintained in good working order, (2) that sufficient materials were on hand to fill prescriptions, and (3) that prescriptions were being filled in a timely manner.  To that end the Individual Defendants intentionally permitted Crestview Pharmacy's customer service function to cease in order to frustrate patients and prescribers.  They further conspired to interfere with the transition of responsibilities pending Mrs. Densman's planned resignation by slowing down work and depleting the pharmacy of supplies for weeks in advance of their planned mass exodus.

64.     Indeed, in early April 2023, OptioRx hired a replacement General Manager/Pharmacist in Charge, Amy Snow, to replace Mrs. Densman.  However, within days of beginning her employment, Ms. Snow was inundated with false information from Mr. Henderson and Mrs. Densman concerning OptioRx its management team, and Company objectives, culture and goals.  As a result of these negative and disparaging remarks regarding OptioRx that the Individual Defendants thrust upon Ms. Snow, she ultimately resigned from her employment on April 5, 2023, after just three (3) days of employment with the Company, once again leaving OptioRx without a Pharmacist in Charge to oversee operations at Crestview Pharmacy.

65.     Upon learning of the Individual Defendants' conspiratorial and

toritous activity, OptioRx promptly transmitted cease and desist correspondence to Reshay Densman, Neil Densman, and Bryan Henderson, respectively, on April 20, 2023, demanding that no further unlawful conduct occur.  At that same time, Reshay Desnman and Neil Densman were notified that their employment with OptioRx had been terminated due to their unlawful, tortious conduct (Mr. Densman's employment was terminated after he walked off the job without warning upon learning of Mrs. Densman's employment termination).  Bryan Henderson was placed on administrative leave pending further investigation by the Company. *See* Group Exhibit C.

66.    Defendants Reshay Densman and Neil Densman, thus far, have failed to respond to OptioRx's demand and continue to work in furtherance of opening Crestview City Pharmacy using OptioRx's improperly obtained confidential information and employees.  Further, while Bryan Henderson responded on April 24, 2023, that he would "continue to follow [his] agreement" with Crestview Pharmacy, his actions demonstrate otherwise.

67.    After being notified that he was being placed on administrative leave, Mr. Henderson was advised to immediately exit the premises and to return all Company property in his possession, custody or control.  Rather than comply with this clear directive, Mr. Henderson was observed stealing controlled substances and syringes prior to exiting the pharmacy, in further violation of his Employment

Agreement and other legal obligations to the Company, in addition to violations of federal and state laws and regulations.  Specifically, interim Pharmacy Manager, Sharon Seymour, observed Mr. Henderson walk over to shelving where boxes containing vials of testosterone were stored and place a number of these boxes, along with a number of syringes, in a bag he was holding, before exiting the building.  After Mr. Henderson left the premises, Ms. Seymour confirmed that four (4) boxes of testosterone were missing from Crestview Pharmacy's inventory, which had been verified the prior evening.  OptioRx later filed a police report concerning this incident and that matter is ongoing.

68.    Within hours of Reshay and Neil Densman's employment terminations, and Bryan Henderson's being placed on administrative leave, the objective of the Individual Defendants' improper employee solicitations and conspiracy were realized when the majority of the employees working at Crestview Pharmacy engaged in a mass exodus, whereby they either provided two-weeks' notice of their intention to resign from their employment or simply walked off the job without warning.  This resignation *en masse* occurred on the morning of April 20, 2023,  resulting in each of the seven (7) Nominal Defendants walking off the job without warning.  That same day, two staff pharmacists, Emily Blackmon and Brittany McDaniel, provided two weeks' notice of their respective intentions to resign.  As a result of this mass exodus, OptioRx temporarily was left without the

required staff needed to fill essential medical prescriptions.

69.     Moreover, following their respective employment termination and administrative leave, the Individual Defendants have continued their efforts to unfairly compete with OptioRx, by using misappropriated confidential and proprietary business information to contact prescribing physicians and patients to disparage OptioRx's handling of their employment terminations and leaves and to solicit those prescribers to instead do business with Crestview City Pharmacy, which, on information and belief, is now in operation.  As a result of the Individual Defendants' statements and actions, a number of prescribers and patients have contacted OptioRx to terminate their business relationship and transfer their business to Crestview City Pharmacy.

70.     The Individual Defendants' actions constitute a breach of their fiduciary duties of loyalty owed to OptioRx as its employees, as well as a breach of the covenants in Bryan Henderson's Employment Agreement not to compete with OptioRx and/or solicit OptioRx's employees to leave their employment.

71.     Accordingly, Defendants have knowingly engaged in direct, unlawful competition and other conduct in blatant violation of their fiduciary, legal and/or contractual obligations to OptioRx.  In furtherance of their foregoing conspiracy, Defendants have engaged in unfair competition by creating confusion in the marketplace as to the source or sponsorship of the services and goods offered by

Defendants through Crestview City Pharmacy, and Defendants' activities to misappropriate OptioRx's reputation and good will

72.     Moreover, Bryan Henderson has breached his Employment Agreement by, directly or indirectly, competing with OptioRx, soliciting employees and customers to do business with Crestview City Pharmacy, and disparaging OptioRx to third parties.  Mr. Henderson further has breached his Employment Agreement (and violated a number of other municipal, state, and federal laws) by stealing controlled substances from the pharmacy.  Defendants Crestview City Pharmacy, Reshay Densman and Neil Densman's actions to intentionally and unjustifiably interfere with the contractual benefits to which OptioRx is entitled pursuant to its agreement with Bryan Henderson further constitutes tortious interference.

73.     As a result of Defendants' aforementioned conduct, OptioRx has suffered and will continue to suffer substantial damages and irreparable harm— particularly, if Defendants are permitted to unfairly compete using OptioRx's longstanding tradename, OptioRx's confidential and proprietary trade secret information and/or OptioRx's employees that Defendants improperly have solicited away for their competing venture.  Indeed, OptioRx already has had a number of its top prescribers and customers terminate their business relationships with OptioRx based on disparaging remarks made by the Individual Defendants

concerning their departure from/status with OptioRx.

## COUNT I – FEDERAL UNFAIR COMPETITION
## IN VIOLATION OF § 1125(a) OF THE LANHAM ACT
(against Defendant Crestview City Pharmacy and the Individual Defendants)

74.   OptioRx incorporates by reference the allegations set forth in Paragraphs 1 through 73, as if fully set forth herein.

75.   On information and belief, Defendants have deliberately and willfully adopted and used OptioRx's Crestview Pharmacy designation in connection with their competing Crestview City Pharmacy in an attempt to trade on the longstanding and hard-earned goodwill, reputation and selling power established by OptioRx connection with its specialty compounding pharmacy business in Florida and throughout the United States, and to confuse consumers as to the origin and sponsorship of Defendants' goods and services.

76.   Defendants' unauthorized and tortious conduct also has deprived, and will continue to deprive, OptioRx of the ability to control the consumer perception of its goods and services marketed under the Crestview Pharmacy designation, placing the valuable reputation and goodwill of OptioRx in the hands of Defendants, over whom OptioRx has no control.

77.   Defendants' conduct is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants' products and services with OptioRx, and as to the origin, sponsorship or approval of Defendants'

products and/or services, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1).

78.     The intentional nature of the aforementioned acts renders this an exceptional case under 15 U.S.C. § 1117(a).

79.     As a result of Defendants' aforementioned conduct, OptioRx has suffered and continues to suffer substantial damage and irreparable harm constituting an injury for which OptioRx has no adequate remedy at law. Accordingly, only an injunction from this Court can prevent OptioRx's further irreparable harm at the hands of the Defendant.

WHEREFORE, Optio Rx, LL and Crestview Pharmacy, LLC respectfully request judgment jointly and severally against Defendants Crestview City Pharmacy, Reshay Densman, Neil Densman, and Bryan Henderson, granting (a) injunctive relief enjoining Defendants from any further use of the Crestview Pharmacy designation or any designations confusingly similar thereto, (b) damages, including lost profits, (c) exemplary and/or treble damages as provided for in 15 U.S.C. §1117, and (d) such other and further relief as the Court may deem just, proper and equitable under the circumstances.

**COUNT II – FLORIDA COMMON LAW**
**<u>TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION</u>**
(against Defendant Crestview City Pharmacy and the Individual Defendants)

80.     OptioRx incorporates by reference the allegations set forth in

Paragraphs 1 through 73, as if fully set forth herein.

81.    OptioRx is the current, active, and exclusive owner of the Crestview Pharmacy designation, which has acquired distinctiveness, and is valid and legally protectable.

82.    Defendants has used the Crestview Pharmacy designation without OptioRx's consent or authorization in the course of establishing a competing pharmacy.

83.    The use of the Crestview Pharmacy designation in connection with the competing pharmacy services is likely to cause confusion between Crestview City Pharmacy on the one hand, and OptioRx's Crestview Pharmacy on the other hand. Such use by Defendants thus infringes on OptioRx's valuable common law rights in the Crestview Pharmacy designation.

84.    Defendants' aforementioned acts also constitute unfair competition with OptioRx by creating confusion as to source or sponsorship of the goods of Defendants, and, Defendants' activities misappropriate the reputation and goodwill of OptioRx's Crestview Pharmacy. As a result of its aforementioned wrongful actions, Defendants will be unjustly enriched.

85.    As a result of Defendants' aforementioned conduct, OptioRx has suffered and will continue to suffer substantial damage and irreparable harm constituting an injury for which OptioRx has no adequate remedy at law.

Accordingly, only an injunction from this Court can prevent OptioRx's further irreparable harm at the hands of Defendants.

WHEREFORE, Optio Rx, LL and Crestview Pharmacy, LLC respectfully request judgment jointly and severally against Defendants Crestview City Pharmacy, Reshay Densman, Neil Densman, and Bryan Henderson, granting (a) injunctive relief enjoining Defendants from any further use of the Crestview Pharmacy designation or any designations confusingly similar thereto, (b) damages, including lost profits, and (c) such other and further relief as the Court may deem just, proper and equitable under the circumstances.

### COUNT III - MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE DEFEND TRADE SECRETS ACT
(against Defendant Crestview City Pharmacy and the Individual Defendants)

86.    OptioRx incorporates by reference the allegations set forth in Paragraphs 1 through 73, as if fully set forth herein.

87.    OptioRx's confidential business information, including lists of customers and the financial details concerning those customers, its business financial statements and reports, and other confidential business information constitute trade secrets which are protected under the DTSA. *See* 18 U.S.C. § 1836 *et seq.* ("Protected Trade Secret Information").

88.    OptioRx's Protected Trade Secret Information goes to the heart of its business and relates to products and services used, sold, shipped and/or ordered in,

or intended to be used, sold, shipped and/or ordered in interstate commerce.

89.    The Protected Trade Secret Information is neither readily ascertainable to Crestview City Pharmacy (or the Individual Defendants but for their employment with OptioRx) or any other OptioRx competitors or the general public, nor available to them through proper means, and derives independent economic value for OptioRx from these facts. OptioRx obtains significant economic benefits with respect to its competitors because of this information.

90.    OptioRx has implemented reasonable measures to protect and safeguard the Protected Trade Secret Information.

91.    Defendants misappropriated and misused the Protected Trade Secret Information in violation of the DTSA. In violation of their duty to safeguard the confidentiality of the Protected Trade Secret Information, the Individual Defendants misappropriated and used, and unless prevented, will continue to use the Protected Trade Secret Information to undermine OptioRx's business and divert its client business to Crestview City Pharmacy.

92.    OptioRx has suffered and will continue to suffer damage and irreparable harm, absent injunctive relief. OptioRx's legal remedy is inadequate, so it seeks injunctive relief to halt Defendants' misuse and dissemination of its confidential, proprietary, and trade secret information and to recover the benefits that information confers.

93.    OptioRx is entitled to injunctive relief, restitution, compensatory and exemplary damages, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1836 *et seq.*

WHEREFORE, Optio Rx, LLC and Crestview Pharmacy, LLC respectfully request judgment jointly and severally against Defendants Crestview City Pharmacy, Reshay Densman, Neil Densman, and Bryan Henderson, granting (a) injunctive relief enjoining Defendants from any further use of the Protected Trade Secret Information, (b) compensatory damages, including lost profits, (c) disgorgement of Defendants' pecuniary gains from their actions, (d) punitive damages for willful and malicious conduct, (e) prejudgment interest and costs, and (f) such other and further relief as the Court may deem just, proper and equitable under the circumstances.

## COUNT IV – VIOLATIONS OF FLA. STAT. § 688.02
## FLORIDA UNIFORM TRADE SECRETS ACT
(against Defendant Crestview City Pharmacy and the Individual Defendants)

94.    OptioRx incorporates by reference the allegations set forth in Paragraphs 1 through 73, as if fully set forth herein.

95.    The Protected Trade Secret Information also constitutes trade secrets under the Florida Uniform Trade Secrets Act ("FUTSA").

96.    OptioRx has a proprietary property interest in the Protected Trade Secret Information.

97.     Defendants misappropriated the Protected Trade Secret Information.

98.     By virtue of their employment status with OptioRx and/or operations in the same industry and otherwise, Defendants had knowledge that Reshay Densman had misappropriated the Protected Trade Secret Information through improper means.

99.     Defendants utilized the Protected Trade Secret Information in the execution of their competing business.

100.    OptioRx was proximately damaged by Defendants' actions.

WHEREFORE, Optio Rx, LLC and Crestview Pharmacy, LLC respectfully request judgment jointly and severally against Defendants Crestview City Pharmacy, Reshay Densman, Neil Densman, and Bryan Henderson, granting (a) injunctive relief enjoining Defendants from any further use of the Protected Trade Secret Information under FUTSA §688.003, (b) compensatory damages, including lost profits, (c) disgorgement of Defendants' pecuniary gains from their actions, (d) attorney's fees under FUTSA §688.004, (e) prejudgment interest and costs, and (f) such other and further relief as the Court may deem just, proper and equitable under the circumstances.

## COUNT V – BREACH OF CONTRACT
(against Defendant Bryan Henderson)

101.    Crestview Pharmacy incorporates by reference the allegations set forth in Paragraphs 1 through 73, as if fully set forth herein.

102. Bryan Henderson's Employment Agreement is a valid and enforceable contract and is supported by valid consideration.

103. Crestview Pharmacy has performed all of its obligations under the Employment Agreement.

104. Mr. Henderson has breached the terms of the Employment Agreement by: (a) assisting Reshay and Neil Densman with the formation and establishment of Defendant Crestview City Pharmacy, (b) soliciting OptioRx employees to leave their employment with Crestview Pharmacy to accept employment at Crestview City Pharmacy, (c) disparaging Crestview Pharmacy to third parties, and (d) misappropriating Crestview Pharmacy's confidential information and property.

105. Crestview Pharmacy has substantial and legitimate interest in protecting its customer and employees relationships, its business reputation and goodwill, its confidential information, and its property.

106. As a direct result of Mr. Henderson's breaches, Crestview Pharmacy's existing and future customer and employee relationships, as well as its confidential information and property have been compromised and damaged.

WHEREFORE, Crestview Pharmacy, LLC respectfully request judgment against Bryan Henderson, granting (a) injunctive relief enjoining Mr. Henderson from any competing with Crestview Pharmacy for the duration of his restrictive covenant period (b) injunctive relief enjoining Mr. Henderson from further

disparaging Crestview Pharmacy or its Affiliates, (c) damages it has sustained as a result of Mr. Henderson's misconduct, including but not limited to compensatory damages and attorneys' fees, and (d) such other and further relief as the Court may deem just, proper and equitable under the circumstances.

## COUNT VI – TORTIOUS INTERFERENCE WITH CONTRACT
(against Defendants Crestview City Pharmacy, Reshay Densman and
Neil Densman)

107.   OptioRx incorporates by reference the allegations set forth in Paragraphs 1 through 73, as if fully set forth herein.

108.   OptioRx had and continues to have contractual relationship with Bryan Henderson.

109.   Defendants, have at all relevant times, been fully aware of this contractual and advantageous business relationships.

110.   Defendants have intentionally interfered with OptioRx's contractual relationship with Mr. Henderson in violation of their duties to OptioRx while there employed, and in violation of federal and state law.

111.   Defendants' misconduct was not legally justified, but it has succeeded in breaching OptioRx's contract with Mr. Henderson.

112.   Defendants' actions are not permitted competition; instead it is unlawful short-cuts taken to avoid having to devote the time, energy, effort and capital needed to lawfully develop their own enterprise, clients and client

relationships.

113.   As a direct and proximate result of Defendants' interference with OptioRx's contractual relationships, OptioRx has suffered substantial damages.

WHEREFORE, Optio Rx, LLC and Crestview Pharmacy, LLC respectfully request judgment jointly and severally against Crestview City Pharmacy, Reshay Densman, and Neil Densman, granting (a) injunctive relief enjoining Defendants from employing or otherwise working with Mr. Henderson in violation of his contract with OptioRx, (b) compensatory damages, including lost profits, (c) punitive damages for their intentional misconduct, (d) prejudgment interest and costs and (e)  such other and further relief as the Court may deem just, proper and equitable under the circumstances.

## COUNT VII – BREACH OF DUTY OF LOYALTY
(against the Individual Defendants)

114.   OptioRx incorporates by reference the allegations set forth in Paragraphs 1 through 73, as if fully set forth herein.

115.   During the course of their employment, the Individual Defendants had a fiduciary duty of loyalty to OptioRx to refrain from using information obtained solely due to their employment with OptioRx to solicit fellow employees to leave their employment at Crestview Pharmacy to accept competing employment with Defendants' competing Crestview City Pharmacy.

116.   However, the Individual Defendants ignored their duty by, during the

course of their respective employment with OptioRx, (1) actively coercing other Crestview Pharmacy employees to refrain from signing OptioRx's proposed Non-Disclosure Agreement, (2) soliciting and entering into an agreement with current Crestview Pharmacy pharmacist, Emily Blackmon, to leave her employment with OptioRx to serve as the General Manager/Pharmacist in Charge at Crestview City Pharmacy; and (3) coordinating a mass resignation in which the majority of the Individual Defendants' fellow Crestview Pharmacy employees would resign, and in fact did resign, *en masse* immediately following the Individual Defendants' departure from OptioRx.

117.   OptioRx has been damaged by the Individual Defendants' improper solicitations for their competing business which caused the resignation of the majority of its Crestview City Pharmacy employees.

WHEREFORE, OptioRx respectfully requests judgment jointly and severally against Defendants Reshay Densman, Neil Densman, and Bryan Henderson, granting (a) injunctive relief enjoining Defendants from employing any improperly solicited employees of OptioRx, (b) compensatory damages, including lost profits, and (c) such other and further relief as the Court may deem just, proper and equitable under the circumstances.

## COUNT VIII– UNFAIR COMPETITION
(against Defendant Crestview City Pharmacy and the Individual Defendants)

118.   OptioRx incorporates by reference the allegations set forth in

Paragraphs 1 through 73, as if fully set forth herein.

119.   Defendants misappropriated and used the Protected Trade Secret Information without OptioRx's permission and adverse to OptioRx's interests, by recruiting OptioRx's customers, employees, and prospects to a competing business, and by competing with OptioRx's business in ways that violates Bryan Henderson's agreement with OptioRx, as described above.

120.   Defendants' conduct was willful and committed in bad faith.

121.   This misconduct harmed OptioRx and its business financially, reputationally, and irreparably.

122.   As a direct and proximate result of Defendants' conduct, OptioRx has suffered commercial damages.

123.   OptioRx is entitled to injunctive relief, restitution, compensatory, consequential damages, and reasonable attorneys' fees.

WHEREFORE, OptioRx respectfully requests judgment jointly and severally against Defendants Crestview City Pharmacy, Reshay Densman, Neil Densman, and Bryan Henderson, granting (a) injunctive relief enjoining Defendants from any further use of the Protected Trade Secret Information to unfairly compete with OptioRx, (b) compensatory damages, including lost profits, (c) prejudgment interest and costs and (d) such other and further relief as the Court may deem just, proper and equitable under the circumstances.

## COUNT IX – CIVIL CONSPIRACY

(against Defendant Crestview City Pharmacy and the Individual Defendants)

124.    OptioRx incorporates by reference the allegations set forth in Paragraphs 1 through 73, as if fully set forth herein.

125.    While Defendants Reshay Densman, Neil Densman, and Bryan Henderson were still employed by OptioRx and obligated to act in the best interests of OptioRx, and while Bryan Henderson was subject to restrictive covenants precluding competition with OptioRx, Defendants and other unnamed persons conspired and agreed to unlawfully compete with OptioRx by misusing OptioRx's computer and email systems without authorization for improper purposes intended to harm and disadvantage OptioRx, misappropriating OptioRx's Protected Trade Secret Information to tortiously interfere with OptioRx's advantageous business relationship with its clients and employees, and to misuse OptioRx's Protected Trade Secret Information to solicit OptioRx's clients and employees to leave OptioRx  and move to Crestview City Pharmacy.

126.    Defendants have, by concerted action, agreed to and acted to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.

127.    As set out in detail in the incorporated allegations, each Defendant willfully and intentionally committed overt acts in furtherance of this conspiracy.

128.    In furtherance of the conspiracy, among other acts, while employed

by OptioRx, Reshay Densman solicited OptioRx employees to join the conspiracy, misappropriated Protected Trade Secret Information and delivered it to the co-conspirators, and misused Protected Trade Secret Information to solicit OptioRx's employees and clients on behalf of Defendant Crestview City Pharmacy.

129.   In furtherance of the conspiracy, among other acts, while employed by OptioRx, Neil Densman solicited OptioRx employees to join the conspiracy, received and misused Protected Trade Secret Information he knew to have been misappropriated to solicit OptioRx employees and clients on behalf of Defendant Crestview City Pharmacy, and sabotaged the working conditions in the Crestview Pharmacy laboratory.

130.   In furtherance of the conspiracy, among other acts, while employed by OptioRx, Bryan Henderson solicited OptioRx employees to join the conspiracy, received and misused Protected Trade Secret Information he knew to have been misappropriated to solicit OptioRx employees and clients on behalf of Defendant Crestview City Pharmacy, disparaged OptioRx to employees and clients in order to harm OptioRx's standing and goodwill with its employees and clients.

131.   In furtherance of the conspiracy, among other acts, Defendant Crestview City Pharmacy accepted, with knowledge of its misappropriation, OptioRx's Protected Trade Secret Information from the co-conspirators, misusing the Protected Trade Secret Information for its own unfair competition with

OptioRx and, despite their fiduciary duty of loyalty to OptioRx, authorizing Defendants Reshay Densman, Neil Densman, and Bryan Henderson to solicit OptioRx employees to leave OptioRx for Crestview City Pharmacy.

132. OptioRx has been and will continue to be proximately harmed by Defendants' wrongful acts done in furtherance of this conspiracy.

133. Defendants' actions have irreparably harmed OptioRx and will continue to irreparably harm OptioRx unless enjoined by the Court, as a result of which OptioRx is without adequate remedy at law.

WHEREFORE, Optio Rx, LL and Crestview Pharmacy, LLC respectfully request judgment jointly and severally against Defendants Crestview City Pharmacy, Reshay Densman, Neil Densman, and Bryan Henderson, granting (a) injunctive relief enjoining Defendants from any further use of the Protected Trade Secret Information to unfairly compete with OptioRx compensatory, (b) injunctive relief enjoining Defendants from employing any of OptioRx's improperly solicited employees, (c) damages, including lost profits, (d) punitive damages for their intentional misconduct, (e) prejudgment interest and costs, and (f) such other and further relief as the Court may deem just, proper and equitable under the circumstances.

Dated:       April 28, 2023                Respectfully submitted,

                                          **OPTIO RX, LLC & CRESTVIEW PHARMACY, LLC**


                                          By: */s/ Aliette D. Rodz*                    


                                          Aliette D. Rodz
                                          ARodz@shutts.com
                                          Florida Bar No. 173592
                                          SHUTTS & BOWEN LLP
                                          200 S. Biscayne Boulevard
                                          Suite 4100
                                          Miami, Florida 33131
                                          Telephone: (305) 358-6300

                                          Alexis M. Dominguez
                                          adominguez@nge.com
                                          (*pro hac vice forthcoming*)
                                          NEAL, GERBER & EISENBERG LLP
                                          Two North LaSalle Street
                                          Suite 1700
                                          Chicago, IL  60602-3801
                                          Telephone: (312) 269-8000
                                          Facsimile: (312) 269-1747

                                          *Attorneys for Plaintiffs*

## VERIFICATION

I declare under penalty of perjury that the foregoing fact statements are true and correct.

Executed on April 27, 2023.

By: _____

Name: Andrew Charter
Title: Chief Pharmacy Officer