## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

OPTIO RX, LLC &
CRESTVIEW PHARMACY, LLC,

                Plaintiffs,

     v.

CRESTVIEW CITY PHARMACY,
INC., JENNIFER RESHAY
DENSMAN, CHRISTOPHER NEIL
DENSMAN & BRYAN HENDERSON,

                Defendants,

AMANDA DAVEY, CLAUDIA
BARNETT, KARI WAITES,
VICTORIA BALLARD,
MORGAN MEEKS, KYNDALL
BARBER & ELLEN STAFFORD

                Nominal Defendants.

Case No. 3:23-cv-08993-MCR-HTC

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS

This is a case concerning the Defendants' infringement of Plaintiffs Optio Rx, LLC's and Crestview Pharmacy, LLC's (collectively "Plaintiffs") trademark, misappropriation of Plaintiff's trade secrets, breach of and tortious interference with certain of Plaintiffs' employment agreements, unfair competition, and civil conspiracy. To obscure their wrongful conduct, Defendants Crestview City Pharmacy, Inc., Jennifer Reshay Densman and Christopher Neil Densman

(collectively, the "Defendants") have pleaded Counterclaims for (i) tortious interference with business relationship; and (ii) defamation.

However, Defendants' Counterclaims lack the requisite factual detail to state viable claims. Specifically, Defendants' tortious interference with business relationship claim is barred by the Florida single action doctrine and fails to allege sufficient facts to establish any of the *prima facie* elements of a tortious interference with business relationship claim. Moreover, Defendants' defamation claim lacks any detail as to who made the allegedly defamatory statements in question, to whom the statements purportedly were made, when such statements were made, or the context or substance of the entire communication. Accordingly, pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants' Counterclaims should be dismissed, *with prejudice*, in their entirety.

## I.   BACKGROUND FACTS

On May 24, 2023, Defendants filed their Counterclaims Against Optio Rx, LLC & Crestview Pharmacy, LLC (the "Counterclaims"), *see* Dkt. 39. In the Counterclaims, Defendants allege that certain unidentified employees of Plaintiffs, whom Defendants claim are "are actual or apparent agents of Crestview Pharmacy" (Counterclaim, ¶ 12), made a number of purported statements concerning Defendants. Specifically, Defendants allege as follows:

1.   "Upon information and belief, beginning at least as early as May 9, 2023, current Crestview Pharmacy employees have told

customers that Counter-Plaintiffs were stealing drugs, 'walked out,' and wrecked or sabotaged equipment before they left Crestview Pharmacy." (*Id.* at ¶ 16.)

2.   "Upon information and belief, beginning at least as early as May 8, 2023, current Crestview Pharmacy employees have told customers that Mrs. Densman had been running the pharmacy into the ground intentionally and that Counter-Defendants had had to recruit staff from Chicago to 'save' them, and are also telling providers that Crestview Pharmacy suffered from staffing issues because of Mrs. Densman's mismanagement." (*Id.* at ¶ 17.)

3.   "Beginning on or around May 6, 2023, in a series of messages and posts in a Facebook group called 'Crestview Word of Mouth', individuals who, on information and belief, are employed by or affiliated with Counter-Defendants, (1) falsely stated that a walkout occurred on April 20, 2023, due to a difference of opinion in how Crestview Pharmacy should be run, (2) falsely stated that Hometown Pharmacy 'is being investigated before their official opening', and (3) repeatedly shared a 'law.com' article regarding the litigation which, upon information and belief, was prepared by Counter-Defendants' counsel in order to cast the Counter-Defendants' actions in a light favorable to their lawsuit and business." (*Id.* at ¶ 18.)

4.   "Customers have informed Counter-Plaintiffs that when they contacted Crestview Pharmacy to seek the Densmans' and Hometown Pharmacy's contact information after the Densmans were terminated on April 20, 2023 employees of Crestview Pharmacy made statements that Hometown Pharmacy is operating 'illegally' and is 'under investigation' by the United States Drug Enforcement Agency and other agencies of the federal government." (*Id.* at ¶ 20.)

Defendants assert that the foregoing statements give rise to claims for tortious interference with business relationship (Count I) and defamation *per se* (Count II). Importantly, however, nowhere in the Counterclaims do Defendants

3

identify the employees who made the purportedly defamatory statements or the customers and/or providers to whom the statements allegedly were made. Defendants further do not provide any factual context for the above-referenced statements, opting instead to rely on excerpted buzzwords, lacking any indication of what may have prompted the unidentified individuals to make such statements.

Nonetheless, Defendants claim that the statements were "malicious and done to eliminate Counter-Plaintiffs' lawful competition with Counter-Defendants." (*Id.* at ¶ 36.) Defendants further allege that, as a result of these statements, Defendants "have suffered substantial damages, including lost business and loss of customer goodwill." (*Id.* at ¶ 31.) Defendants do not identify any particular customers and/or business that was adversely affected by the statements at issue.

## II.    LEGAL STANDARD

Rule 12(b)(6) provides that a pleading may be dismissed for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). Although a complaint need not contain detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than "labels and conclusions." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action will not do; factual allegations must be enough to raise a right to relief above the speculative level. *Id.* Thus, to survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009).

## III.   DEFENDANTS' COUNTERCLAIMS SHOULD BE DISMISSED UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM

### A.   Defendants Fail to State a Claim for Tortious Interference with Business Relationship

Defendants' tortious interference with business relationship claim fails because: (1) it is barred by the Florida single action rule, and (2) lacks sufficient factual allegations to establish a viable claim for tortious interference with business relationship.

### 1.   Defendants' Tortious Interference Claim Is Barred Under the Single Action Doctrine

It is settled law in Florida that "a single publication gives rise to a single cause of action," and "[t]he various injuries resulting from it are merely items of damage arising from the same wrong." *Tobinick v. Novella*, No. 9:14-CV-80781-ROSENBERG/BRAN, 2015 U.S. Dist. LEXIS 8085, at \*35 (S.D. Fla. Jan. 23, 2015). Thus, Florida law "prohibits defamation claims from being 're-characterized in additional, separate counts.'" *Id.* Instead, "[w]hen claims are based on analogous underlying facts and the causes of action are intended to compensate for the same alleged harm, a plaintiff may not proceed on multiple counts for what is essentially the same defamatory publication or event." *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1256 (S.D. Fla. 2014).

5

Here, Defendants base their tortious interference with business relationship claim on the exact same factual allegations upon which they base their defamation claim. Indeed, in Paragraph 32 of the Defendants' defamation counterclaim, Defendants expressly "repeat and reallege each and every allegation set forth in the preceding paragraphs of the counterclaims as if the same were fully set forth at length herein," including all allegations set forth in support of their tortious interference counterclaim. (Counterclaim, ¶ 32.) Accordingly, because Defendants' tortious interference claim is based on the same purported statements/publications as their defamation claim, that claim is barred under the single action rule and must be dismissed with prejudice. *See Kamau v. Slate*, No. 4:11cv522-RH/CAS, 2012 U.S. Dist. LEXIS 158213, at *23 (N.D. Fla. Oct. 1, 2012) ("Plaintiffs may not proceed on multiple claims for the same challenged defamatory actions. The claim for defamation cannot be re-characterized in additional, separate counts for libel, slander, or the intentional infliction of emotional distress if the claim arises from the same publication."); *Soho Ocean Resort TRS, LLC v. Rutois*, No. 19-61335-CIV, 2020 U.S. Dist. LEXIS 120467, at *8-9 (S.D. Fla. July 6, 2020) (dismissing tortious interference claim because "such claim is barred by the single action rule"); *Trujillo v. Banco Central Del Ecuador*, 17 F. Supp. 2d 1334, 1339-40 (S.D. Fla. 1998) (dismissing false light invasion of privacy claim with prejudice because

"Plaintiffs failed to base their false light claim on a separate cause of action" from their defamation claim).

### 2. Defendants Cannot Otherwise Plead Tortious Interference with Business Relationship

"Under Florida law, the elements of tortious interference with a business relationship are: (1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff." *International Sales & Service v. Austral Insulated Products*, 262 F.3d 1152, 1154, 14 Fla. L. Weekly Fed. C 1053 (11th Cir. 2001); *Sandshaker Lounge & Package Store LLC v. RKR Bev. Inc.*, No. 3:17-cv-00686-MCR-CJK, 2018 U.S. Dist. LEXIS 224519, at *19 (N.D. Fla. Sep. 27, 2018) (J., Rodgers). Here, Defendants fails to allege facts sufficient to satisfy any of the *prima facie* elements of their claim for tortious interference with business relationship.

### a. *Defendants Fail to Plead the Existence of a Protectable Business Relationship.*

As this Court previously has noted, while "[t]here is a cause of action for tortious interference with existing or prospective customers[, there is no claim] for tortious interference with a business's relationship to the community at large." *Sandshaker Lounge*, 2018 U.S. Dist. LEXIS 224519, at *19. This is because as a

general rule, an action for tortious interference with a business relationship requires a business relationship "evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Id.* "[T]he asserted relationship must be with an identifiable customer." *Locked Offraod, LLC v. Carbon Shock Technologies, Inc.*, No. 8:22-cv-2564-MSS-MRM, 2023 U.S. Dist. LEXIS 75816, at *10 (M.D. Fla. Mar. 14, 2023).

Here, Defendants fail to plead any facts evidencing the existence of a single identifiable business relationship, let alone the existence of an agreement or understanding, with which Plaintiffs interfered. Indeed, Defendants' Counterclaims make no reference to any identifiable purported customers or providers. Instead, the Counterclaims reference purported communications between Crestview Pharmacy employees and its own customers and providers and purported postings on Facebook to the public at large. (Counterclaim, ¶¶ 16-18, 20, 26-27.) The only reference to Defendants' own customers is a conclusory reference in Paragraph 20 of Defendants' Counterclaims to unidentified "customers" who Defendants claim were "seek[ing] the Densmans' and Hometown Pharmacy's contact information." (*Id.* at ¶ 20.)

Such generic assertions fail as a matter of law because Defendants have not identified the customers or providers who were the subject of the alleged

interference. *Locked Offraod, LLC*, 2023 U.S. Dist. LEXIS 75816, at *11 ("[T]he Court finds that Plaintiff has failed to meet its requirement to plead "identifiable customers."); *Sandshaker Lounge*, 2018 U.S. Dist. LEXIS 224519, at *20 ("Sandshaker has failed to state a claim of tortious interference because it has not specifically identified the customers, i.e., which local charity and community groups, that were the subject of the alleged interference."); *Sarkis v. Pafford Oil Co.*, 697 So. 2d 524, 526 (Dist. Ct. App. 1997) (affirming dismissal of tortious interference claim where "the amended complaint does not identify the customers who were the subject of the alleged interference").

Notwithstanding this fatal pleading deficiency, Defendants' assertion that Plaintiffs tortiously interfered with Defendants' "customers" further is belied by the fact that the individuals referenced in Paragraph 20 lacked Defendants' contact and/or business information, meaning that they had not yet been in contact or done business with Defendants. (Counterclaim, ¶ 20.) Indeed, because Defendants did not begin operations until April 24, 2023 (*Id.* at ¶ 24), it follows that such individuals could not have been existing customers of Defendants at the time of the alleged statements referenced in Paragraph 20. Accordingly, because at best the "customers" identified in the Counterclaims were prospective customers, Defendants have failed to allege the existence of a protectible business relationship. *See Duty Free Americas, Inc. v. Estee Lauder Cos.*, 797 F.3d 1248,

1279-80 (11th Cir. 2015) ("A mere offer to sell, however, does not, by itself, give rise to sufficient legal rights to support a claim of intentional interference with a business relationship.")

> b.  *Defendants have insufficiently pled Plaintiffs' knowledge of Defendants' business relationships.*

With respect to the "knowledge" element of their claim, Defendants simply assert that "Counter-Defendants were aware that providers and patients were contacting Hometown Pharmacy and that it fills prescriptions." (Counterclaim, ¶ 25.) However, "the second element of tortious interference requires more than mere knowledge of a business relationship in some abstract sense." *NoNaNi Ent., LLC v. Live Nation Worldwide, Inc.*, No. 8:22-cv-1829-WFJ-JSS, 2023 U.S. Dist. LEXIS 24073, at *6 (M.D. Fla. Feb. 13, 2023). Indeed, Defendants have failed to allege when Plaintiffs would have learned of the purported relationships in question and/or that Plaintiffs were aware of some exclusive business relationship between Defendants and such customers and providers. *See Dynasty Management Group, LLC v. Alsina*, No. 16-20511-CIV-WILLIAMS, 2017 U.S. Dist. LEXIS 152034, at *8 (S.D. Fla. Sep. 6, 2017) (dismissing tortious interference claim where plaintiff "does not establish when [the defendants] learned about the Dynasty-Alsina relationship, nor how or whether [the defendants] knew the Management Agreement was exclusive"). Accordingly, Defendants have not adequately pled Plaintiffs' knowledge of Defendants' customer relationships.

c.   *Defendants cannot establish intentional and unjustified interference by Plaintiffs.*

"[I]ntentional and unjustified interference with a business relationship, requires the plaintiff to allege that the defendant acted without justification.'" *Duty Free Americas*, 797 F.3d at 1280. However, Florida recognizes a "privilege of interference," meaning that where "there is no contract right to have the relation continued, but only an expectancy[,] … a competitor has the privilege of interference in order to acquire the business for himself." *Id.* To overcome this privilege, a claimant must allege "a purely malicious motive" divorced from any "legitimate competitive economic interest." *Id.* Moreover, where a claimant has "failed to adequately allege improper methods," dismissal is appropriate. *See id.* at 1281 (listing cases).

Here, not only do Defendants fail to allege any facts, beyond conclusory assertions made on information and belief, suggesting that Plaintiffs induced or encouraged any of the offending statements in question to be made by certain unidentified employees, they also fail to demonstrate that such actions were undertaken for an improper means. Rather, it is clear from the allegations in Defendants' Counterclaims that the alleged statements at issue would have been made to protect Plaintiffs' business from further unfair competition from, and loss of business to, Defendants. As the Eleventh Circuit has previously held, statements made in order to secure work for a competing business constitute privileged

11

interference. *See id.* (affirming dismissal of tortious interference claim because "as DFA acknowledges, each duty free operator was attempting to procure the same airport contract for itself"). Thus, Defendants' tortious interference with business relationships claim is insufficiently pleaded. *See XTEC, Inc. v. Hembree Consulting Services,* No. 14-21029-CIV, 2014 U.S. Dist. LEXIS 200734, at *14-15 (S.D. Fla. Aug. 1, 2014) (holding that "[b]ecause the third element [of Defendants' tortious interference claim] depends on the same facts underlying Defendants' failed defamation claim, this counterclaim is also dismissed as insufficiently pleaded.")

### d. *Defendants Fail to Plead Actual Damages.*

"[A]n integral element of a claim of tortious interference with a business relationship requires proof of damage to the plaintiff *as a result of the breach of the relationship*." *Balesia Technologies, Inc. v. Cuellar*, No. 22-CV-62085-RUIZ/STRAUSS, 2023 U.S. Dist. LEXIS 73490, at *25 (S.D. Fla. Apr. 27, 2023) (emphasis in original); *Sandshaker Lounge*, 2018 U.S. Dist. LEXIS 224519, at *19 ("Imbedded within these elements is the requirement that the plaintiff establish that the defendant's conduct caused or induced the breach that resulted in the plaintiff's damages."). Here, Defendants fail to plausibly plead any damages, let alone damages resulting from the breach of <u>any</u> business relationship.

12

Instead, Defendants plead in conclusory fashion that "[a]s a direct and proximate result of Counter-Defendants' intentional and unjustified interference with Counter-Plaintiff's current and prospective business relationships, Counter-Plaintiffs have suffered substantial damages, including lost business and loss of customer goodwill." (Counterclaim, ¶ 31.) In so pleading, Defendants merely recite the elements of a claim for tortious interference with business relationship.

Defendants' tortious interference claim thus fails because Defendants have not alleged the breach of any specific business relationships—nor could they because at the time of the purported statements in question the "customer" relationships in question belonged to Plaintiffs. *See supra* Section III.A.2.a. Defendants' failure to make a "single allegation that any [identifiable customer] chose to reduce or end its business with [Defendants] based on anything the [Plaintiffs] did … is … fatal to [Defendants'] tortious interference claim." *Vibo Corp. v. U.S. Flue-Cured Tobacco Growers, Inc.*, No. 17-22034-WILLIAMS, 2018 U.S. Dist. LEXIS 82539, at *19 (S.D. Fla. May 14, 2018) ("[T]he tortious interference claim must be dismissed because Plaintiff has 'not identif[ied] any legal rights at stake, and it [has] not allege[d] any instances of customers[, distributors or retailers] not performing pursuant to those legal rights.").

Indeed, the allegations in support of Defendants' tortious interference claim suggest ongoing relationships with the customers in question. (Counterclaim, ¶¶ 20

& 25.) How else would Defendants allegedly have come to learn of the statements in question? Accordingly, Defendants have failed to sufficiently plead damages. *See Sandshaker Lounge*, 2018 U.S. Dist. LEXIS 224519, at *21-22 (dismissing tortious interference claim because "there are no facts alleged in Count V showing that the event sponsors or community groups stopped doing business with Sandshaker"); *Balesia Technologies, Inc.*, 2023 U.S. Dist. LEXIS 73490, at *26 (dismissing tortious interference with business relationship claim because "the allegations seem to indicate that the relationship between Plaintiffs and PTI remains intact").

### B.     Defendants Fail to State a Claim for Defamation

"In order to state a claim for defamation under Florida law, a party must allege: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory. *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).

A defamatory statement is of a *per se* "character when, 'considered alone without innuendo,' they contain (1) charges that a person has committed an infamous crime, or (2) has contracted an infectious disease, or (3) they carry statements tending to subject a person to hatred, distrust, ridicule, contempt or

35302677.1

disgrace, or (4) to injure a person in his trade or profession." *Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1258 (S.D. Fla. 2021) (quoting *Adams v. News-Journal Corp.*, 84 So. 2d 549, 551 (Fla. 1955)). In determining whether a publication is defamatory *per se*, "consideration is given only to the 'four corners' of the publication and the language used should be interpreted as the 'common mind' would normally understand it." *Id.*

Here, Defendants do not allege any actual damage as a result of the purported defamatory statements in question. Rather, Defendants allege defamation *per se* on the sole basis that the purported statements at issue allegedly "impugn Counter-Plaintiffs' business reputations and practices in their profession." (Counterclaim, ¶ 35.) However, for the reasons that follow, Defendants' defamation claim fails as a matter of law:

    1.   <u>Defendants Fail to Set Out the Who, What or When of the Allegedly Defamatory Statements</u>

As this Court previously has held, a claim for defamation "must allege specific information such as the identity of the speaker or writer of the statement; the identity of the person who heard or read the statement; a description of the statement; and a time frame of when the statement was made." *Sandshaker Lounge*, 2018 U.S. Dist. LEXIS 224519, at *23; *see also Woodhull v. Mascarella*, No. 1:08CV151-SPM/AK, 2009 U.S. Dist. LEXIS 133531, at *5 (N.D. Fla. Mar. 19, 2009). Moreover, while a claimant "need not set out the defamatory language

15

verbatim, … [they] must set out the substance of the spoken words with sufficient particularity to enable the Court to determine whether a publication was defamatory." *Selby v. Tyco Healthcare Group, L.P.*, No. 6:05-cv-719-Orl-19KRS, 2005 U.S. Dist. LEXIS 60248, at *4 (M.D. Fla. Dec. 12, 2005).

Here, Defendants fail to give Plaintiffs the requisite fair notice of the alleged defamatory statements at issue as Defendants do not identify the alleged speaker in question, to whom the statements allegedly were made, precisely when the statements were made, or the substance of the statements at issue (let alone the context for those purported statements or publications). *See Sandshaker,* 2018 U.S. Dist. LEXIS 224519, at *23 (dismissing defamation claim because claimant "has not identified the authors of the allegedly defamatory statements"); *Bell v. Novartis Pharmaceuticals Corp.*, No. 8:08-cv-30-T-17-EAJ, 2008 U.S. Dist. LEXIS 107195, at *11 (M.D. Fla. July 3, 2008) (dismissing defamation claim because "Plaintiff failed to disclose the identities of Defendant's employee that made the alleged defamatory statement and the pharmaceutical representative alleged to have heard the statement").

For instance, rather than identify the alleged speakers in question, Defendants rely on broad, generalized references to certain unidentified "Crestview Pharmacy employees" and/or "individuals who, on information and belief, are employed by or affiliated with [Plaintiffs]." (Counterclaim, ¶¶ 16-18,

16

20.) Similarly, with respect to the individuals to whom the alleged statements were made, Defendants merely assert that statements were made to unidentified "customers," "providers," and individuals on Facebook. (*Id.*) Defendants also fail to specify the precise dates on which the alleged statements/publications were made, further preventing Plaintiffs from determining the potential parties involved in making/hearing the allegedly defamatory statements.

Without knowing by whom or to whom the allegedly defamatory statements were made, Defendants cannot determine, for example, whether certain affirmative defenses may exist. *See Ward v. Triple Canopy, Inc.*, 2017 U.S. Dist. LEXIS 115472, at *4 (M.D. Fla. July 25, 2017) ("[P]laintiff must plead the 'identity of the particular person to whom the remarks were made with a reasonable degree of certainty" to afford the defendant "enough information to determine affirmative defenses.").

Moreover, with respect to the substance of the communications, Defendants principally assert buzzwords and conclusory allegations in Paragraphs 16, 17, 18, and 20, rather than provide the requisite detail/context necessary for Plaintiffs or the Court to evaluate whether the statements in question are an expression of opinion or rhetorical hyperbole. *Murray v. Pronto Installations, Inc.*, No. 8:20-cr-824-T-24AEP, 2020 U.S. Dist. LEXIS 213494, at *13 (M.D. Fla. Nov. 16, 2020) ("In determining whether an allegedly defamatory statement is an expression of

fact or an expression of rhetorical hyperbole, context is paramount."). As but one example of many, as to the purported Facebook postings referenced in Paragraph 18, Defendants make generic reference to three separate posts, yet fail to attach copies of the posts in question, which are necessary for Plaintiffs and the Court to properly evaluate the four-corners of the statements in question. (*Id.* at ¶ 18.) Indeed, Defendants reference a purported "law.com" article without identifying a single statement contained therein, defamatory or otherwise.[1] (*Id.*); *see Sandshaker Lounge*, 2018 U.S. Dist. LEXIS 224519, at *24 (dismissing defamation claims as to social media posts where the claimant "does not identify or describe any defamatory statements published by Defendants").

For these reasons, Defendants' generic allegations in support of their defamation counterclaim lack the detail necessary to state a claim for defamation. *See Manhattan Capital Equities, Inc. v. JBTX3 Holdings, LLC*, No. 20-60926-CIV, 2021 U.S. Dist. LEXIS 37693, at *7 (S.D. Fla. Feb. 26, 2021) ("Defendants argue the [defamation claims in the] First Amended Complaint … should be dismissed because Plaintiff failed to set forth the who, what, and when, and in which format,

---

[1] There is no basis for Defendants' claim that counsel for Plaintiffs had anything to do with the publication of the unidentified "law.com" article in question. Defendants' assertion, "upon information and belief," is mere speculation and conjecture and should be rejected as such. *Honig v. Kornfeld*, No. 18-80019-CV-MIDDLEBROOKS, 2019 U.S. Dist. LEXIS 63401, at *9 (S.D. Fla. Mar. 8, 2019) ("[A] complaint will be dismissed where the allegations are conclusory and vague.")

these statements were allegedly made. This Court agrees."); *Aflalo v. Weiner*, No. 17-61923-CIV, 2018 U.S. Dist. LEXIS 110134, at *12-13 (S.D. Fla. July 2, 2018) ("Plaintiff's assertion that the Statement was put on Defendant's Facebook wall 'for all to see' fails to identify those persons to whom the Facebook post was published with a reasonable degree of certainty."); *Fowler v. Taco Viva, Inc.*, 646 F. Supp. 152, 157-58 (S.D. Fla. 1986) (To assert a viable claim for slander the Plaintiff must allege certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred. Absent sufficient allegations, a claim for slander is properly dismissed for failure to state a cause of action.") (citation omitted).

    2.    <u>Defendants' Defamation Claim Fails Because the Statements in Question are Protected by Qualified Privilege Based on a Mutuality of Interest</u>

Defendants' defamation claim also fails because "[i]n Florida, a statement made by one having an interest or duty in the subject matter thereof, to another person having a corresponding interest or duty therein, is conditionally privileged, even though the statement may be false and otherwise actionable." *Prestige Insurance Group v. Allstate Insurance Co.*, No. 21-60515-CIV-MORE, 2022 U.S. Dist. LEXIS 67682, at *11 (S.D. Fla. Apr. 12, 2022); *see also Regions Bank v. Kaplan*, Nos. 17-15478, 18-13220, 2021 U.S. App. LEXIS 31542, at *35 (11th Cir.

Oct. 19, 2021). Indeed, the Florida Supreme Court has noted as follows concerning the qualified privilege:

> A communication made in good faith on any subject matter by one having an interest therein, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which would otherwise be actionable, and though the duty is not a legal one but only a moral or social obligation.

*Nodar v. Galbreath*, 462 So. 2d 803, 809 (Fla. 1984) (superseded on other grounds). In other words, communications made in good faith by an individual with an interest in the communication to another individual with an interest in the communication are privileged.

The qualified privilege changes the burden of proof: "in order for the [claimants] to recover, [they are] called upon affirmatively and expressly to show malice in the publisher." *Regions Bank v. Kaplan*, Nos. 17-15478, 18-13220, 2021 U.S. App. LEXIS 31542, at *35-36 (11th Cir. Oct. 19, 2021). "Strong, angry, or intemperate words do not alone show express malice; rather, there must be a showing that the speaker used his privileged position 'to gratify his malevolence.'" *Id.* However, "[i]f the occasion of the communication is privileged because of a proper interest to be protected, and the defamer is motivated by a desire to protect that interest, he does not forfeit the privilege merely because he also in fact feels hostility or ill will toward the plaintiff." *Id.* (quoting *Nodar*, 462 So. 2d at 811-812.

Here, the qualified privilege applies because the purported statements in question principally occurred between certain unidentified Crestview Pharmacy employees, customers, and/or providers bearing a mutuality of interest.[2] (Counterclaim, ¶¶ 16-17, 20.) Specifically, Plaintiffs' customers and/or providers had an interest in learning of and, in fact, are alleged to have inquired about the status of Mr. and Mrs. Densman (individuals with whom such customers & providers would have worked over a number of years while Mr. and Mrs. Densman were employed at Crestview Pharmacy (Counterclaim, ¶ 13)), and Plaintiffs had an obligation to responding to such customer/provider inquiries. *See Shaw v. R. J. Reynolds Tobacco Co.*, 818 F. Supp. 1539, 1542-43 (M.D. Fla. 1993) (applying the qualified privilege where "the customer had an interest in learning what happened to a sales representative with whom she had a longstanding personal and business relationship, and the Defendant had the primary motive of responding adequately to a customer's inquiry"); *see also John Hancock Mutual Life Insurance Co. v. Zalay*, 581 So. 2d 178, 179 (Dist. Ct. App. 1991) ("[C]ommunications made for bona fide commercial purposes where the interest to be protected is the recipient's;

---

[2] As explained *supra* Section III.B.1, Defendants' allegations concerning purported Facebook posts (Counterclaim, ¶ 18) are not well pleaded and fail to support a claim of defamation based on the lack any allegations establishing the substance of the purported postings or by whom/to whom the statements purportedly were published. *See Sandshaker Lounge*, 2018 U.S. Dist. LEXIS 224519, at *24 (dismissing defamation claims as to social media posts where the claimant "does not identify or describe any defamatory statements published by Defendants").

35302677.1

and, in business matters where both parties have a corresponding interest in the matter are also recognized as privileged occasions."); *Crestview Hospital Corp. v. Coastal*, 203 So. 3d 978, 981 (Fla. Dist. Ct. App. 2016) (noting that in "evaluative discussions … the law extends a conditional privilege to the speaker and presumes good faith, even when the comments are critical.")

In light of the foregoing qualified privilege, Defendants' defamation claim fails because they have not pleaded express malice. Rather, Defendants merely plead that "Counter-Defendants' statements were malicious and done to eliminate Counter-Plaintiffs' lawful competition with Counter-Defendants." (Counterclaim, ¶ 36.) On its face, this conclusory, unsupported allegation is insufficient to establish express malice as there is no allegation that Plaintiffs acted "with the primary motive of gratifying ill will, hostility, and [a] desire to harm" Defendants. *See Regions Bank*, 2021 U.S. App. LEXIS 31542, at *38 (affirming dismissal of defamation counterclaim based on Kaplan's failure to plead express malice); *Prestige Insurance Group v. Allstate Insurance Co.*, No. 21-60515-CIV-MORE, 2022 U.S. Dist. LEXIS 67682, at *12 (S.D. Fla. Apr. 12, 2022) (dismissing defamation claim where "Plaintiffs have not alleged that Allstate intended to injure them, nor have they alleged ill will or hostility"). Nor could Defendants make a showing of express malice because, as explained *supra* Section III.A.2.c, Florida

22

recognized a "privilege of interference," which affords a competitor a privilege of interference in order to acquire the business for itself.

For these reasons, Defendants' defamation claim fails as a matter of law.

## IV.    CONCLUSION

WHEREFORE, Plaintiffs Optio Rx, LLC and Crestview Pharmacy, LLC respectfully request that the Court enter an order: (1) granting this Motion to Dismiss Defendants' Counterclaims, (2) dismissing with prejudice, in their entirety, Defendants' Counterclaims [Dkt. 39], and (3) granting such other relief as the Court deems appropriate.

23

Dated: June 14, 2023

Respectfully submitted,

**OPTIO RX, LLC & CRESTVIEW PHARMACY, LLC**

By: /s/ *Alexis M. Dominguez*

Jonathan S. Quinn
jquinn@nge.com
(*pro hac vice pending*)
Alexis M. Dominguez
adominguez@nge.com
(*admitted pro hac vice*)
Andrew Hamilton
ahamilton@nge.com
(*pro hac vice pending*)
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street
Suite 1700
Chicago, IL 60602-3801
Telephone: (312) 269-8000
Facsimile: (312) 269-1747

Aliette D. Rodz
ARodz@shutts.com
SHUTTS & BOWEN LLP
200 S. Biscayne Boulevard
Suite 4100
Miami, Florida 33131
Telephone: (305) 358-6300

*Attorneys for Plaintiffs*

35302677.1

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on June 14, 2023, he caused the foregoing document to be electronically filed with the Clerk of Court using CM/ECF, which sent notification of such filing to all counsel of record.

*/s/ Alexis M. Dominguez*

## <u>CERTIFICATION OF WORD COUNT</u>

The undersigned counsel hereby certifies that the relevant portion of the foregoing document contains 4965 words.

*/s/ Alexis M. Dominguez*

35302677.1