UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**OPTIO RX, LLC, et al.,**

    **Plaintiffs,**

    v.                                    **CASE NO. 3:23-cv-08993-MCR-HTC**

**CRESTVIEW CITY**
**PHARMACY, INC., et al.,**

    **Defendants.**

_____/

## ORDER

Pending is Plaintiff Optio Rx, LLC and Crestview Pharmacy, LLC's (collectively, "Plaintiffs") Motion for Preliminary Injunction against Defendants Crestview City Pharmacy, Inc., Jennifer Reshay Densman, and Christopher Neil Densman, (collectively, "Densman Defendants").[1]  ECF No. 1-5.  The Court conducted an evidentiary hearing on May 5, 2023.  Now, considering the evidence and the parties' written submissions, the Court concludes that the Motion for Preliminary Injunction should be denied.

---

[1] The following individuals are not subject to this Motion for Preliminary Injunction but are still parties to this litigation: (1) Crestview Pharmacy former co-owner Bryan Henderson, and (2) former employees Amanda Davey, Claudia Barnett, Kari Waites, Victoria Ballard, Morgan Meeks, Kyndall Barber, and Ellen Stafford referred to in the Verified Complaint as "Nominal Defendants."  ECF No. 1 at 1-2.

## I. Findings of Fact

Plaintiffs filed a nine-count Verified Complaint[2] and an emergency motion for injunctive relief to protect Crestview Pharmacy's tradename and trade secrets, and to halt the allegedly improper solicitation of its employees and prescribing medical providers as a result of the conduct of former employees, Jennifer Reshay Densman, the former general manager of Crestview Pharmacy, her husband Christopher Neil Densman, who was the lead compounding pharmacist at Crestview Pharmacy, and Bryan Henderson, former Crestview Pharmacy co-owner who is not subject to this Motion for Preliminary Injunction. *See* ECF No. 1-6. Plaintiffs allege that while still employed by Plaintiffs, the Densmans started a competing business under the name Crestview City Pharmacy and solicited other Crestview Pharmacy employees to leave their employment with Crestview Pharmacy and start work at the new pharmacy. Plaintiffs also allege that Mrs. Densman misappropriated trade secrets in the form of a "Top Providers List" of prescribing physicians and related

---

[2] More specifically, the Verified Complaint includes counts for: (1) federal unfair competition in violation of § 1125(a) of the Lanham Act; (2) Florida common law trademark infringement and unfair competition; (3) misappropriation of trade secrets in violation of the defend trade secrets act; (4) violations of Fla. Stat. § 688.02 Florida uniform trade secrets act; (5) breach of contract; (6) tortious interference with contract; (7) breach of duty of loyalty; (8) unfair competition; and (9) civil conspiracy. ECF No. 1.

financial information.[3]  Plaintiffs insist that a preliminary injunction is necessary to prevent further irreparable harm from the Densman Defendants' allegedly unfair competitive actions.[4]

At the start of the evidentiary hearing, before any evidence was admitted, the parties reached several stipulations that significantly narrowed the issues for consideration, including, among other things, that (1) the Densman Defendants would cease doing business under the name Crestview City Pharmacy, file updated articles of incorporation with the name Hometown Pharmacy, Inc., and not imply any affiliation with Plaintiffs; (2) the Densman Defendants would return relevant documents and emails to Crestview Pharmacy that remain in their possession; (3) the Densman Defendants would not solicit, directly or indirectly, any current or future employees of Crestview Pharmacy; and (4) the Defendant Bryan Henderson

---

[3] The Top Providers List is a list of Crestview's top twenty prescribing providers and the corresponding retail financial data for each between June 1 and August 31, 2022.  ECF No. 28-5 at 2 (Sealed Exhibit).

[4] The Plaintiffs initially requested an emergency temporary restraining order (TRO).  The Plaintiffs' initial TRO request did not include Rule 65(b)'s attorney certification requirement.  *See* Fed. R. Civ. P. 65(b).  As a result, the Court ordered that the certification be submitted.  In response, Plaintiffs' attorney certified that Plaintiffs provided actual notice of the Verified Complaint and TRO request.  Given that actual notice was provided, the Court found it appropriate to convert the Plaintiffs' request for a TRO into an emergency preliminary injunction motion and schedule a hearing.  *See* ECF No. 7.

Page 4 of 20

would continue to comply with his employment agreement and would return any company documents, copies, or passwords to the Plaintiffs. *See* ECF No. 35.

Given the stipulations, the Court now considers whether the Densman Defendants should be enjoined from: (1) soliciting or doing business with the medical providers identified on Plaintiffs' confidential Top Providers List and (2) employing any former Crestview Pharmacy employees improperly solicited. ECF No. 30 at 3.

Four witnesses testified at the evidentiary hearing—Optio Rx's chief pharmacy officer Andrew Charter, the Densmans, and laboratory technician April Koski. The evidence shows that in 2018, Optio Rx acquired Crestview Pharmacy, a local compounding pharmacy in Crestview, Florida. Compounding pharmacies, which are more of a "provider-relationship-driven business" than traditional retail pharmacies, tailor medications to a patient's needs. ECF No. 29 at 34. As a result, medical providers usually send most of their patients to a single compounding pharmacy. In 2023, while experiencing understaffing and prescription fulfillment delays, Crestview Pharmacy began losing business as providers went elsewhere to fulfill their prescription requests. Mr. Charter attributed these problems to the Densmans's efforts to start a competing compounding pharmacy in which they would employ Crestview Pharmacy's employees and generate new business using

Crestview Pharmacy's Top Provider List, although there was no evidence submitted to show that any provider stopped sending prescriptions to Crestview Pharmacy as a result of the Densmans's efforts.

With over a decade of experience working at Crestview Pharmacy, the Densmans had gained transferable skills. Mr. Densman had experience overseeing the compounding process and Mrs. Densman had experience overseeing pharmacy operations, developing relationships with both providers and her coworkers, and compiling the Top Providers List. Mrs. Densman testified that she considered some of her coworkers her friends, and had known some of the providers, who would call her on her personal cellphone, prior to Optio Rx's acquisition of Crestview Pharmacy. *Id.* at 153, 183.

In October 2022, while still employed as Crestview Pharmacy's general manager, Mrs. Densman filed articles of incorporation for the competing pharmacy. That same month, Optio Rx started requiring all employees nationwide, including Crestview Pharmacy employees, to sign a Non-Disclosure Agreement containing restrictive covenants precluding employees from disclosing confidential information and soliciting coworkers and providers. *Id.* at 96-97. In determining whether to sign the Non-Disclosure Agreement, Mrs. Densman sought the advice of an attorney and shared the legal findings with her co-workers, who were unable to afford legal

counsel.  *Id.* at 163.  Ultimately, the Densmans and numerous employees did not sign the Non-Disclosure Agreement.  ECF No. 34 at 11.

By February 2023, Mrs. Densman informed Crestview Pharmacy of her plans to resign, and agreed with Crestview Pharmacy that her last day would be April 2023, which would allow her to assist with the transition of her managerial duties.  ECF No. 29 at 99.  **While** Mrs. Densman had not informed Optio Rx of her plans to open a competing pharmacy, Crestview Pharmacy employees were aware that the Densmans intended to open a competing pharmacy.  **Although** the Densmans did not formally offer employment to any of their coworkers while working at Crestview Pharmacy, Laboratory Technician April Koski testified that it was "implied" that employees would have a job at the competing pharmacy; however, her testimony was clear that the Densmans did not offer her a position.  *Id.* at 208.

In preparation for her departure from Crestview Pharmacy, Mrs. Densman forwarded several emails to her personal account that she testified she might need for the future given that she would no longer have access to her email account once she left Crestview Pharmacy.  *Id.* at 146.  On April 14. 2023, Mrs. Densman forwarded herself the Top Providers List containing a list of Crestview's top twenty prescribing providers and the corresponding retail financial data.  ECF No. 28-5 at 2 (Sealed Exhibit).  Mrs. Densman testified that she forwarded herself the Top

Provider List by "accident" and deleted the email after discovering what she had done. ECF No. 29 at 145. Discussing the "significance" of the Top Providers List, Mr. Charter testified that the providers on the list represented more than half of Crestview Pharmacy's business. *Id.* at 61. Because the Top Providers List delineated which providers were writing most of the prescriptions, it was used by the sales team to target providers. *Id.* at 56. Mr. Charter testified that this information was not known to the public, competitors, or even to some of Crestview Pharmacy employees, and that Crestview Pharmacy had implemented password-protected systems and maintained an employee handbook to protect this information. *Id.* at 61-62.

On April 20, 2023, the Densmans were terminated after Crestview Pharmacy became aware of their plan to open the competing pharmacy. Mr. Densman was terminated via phone call and Mrs. Densman was personally informed by an Optio Rx lawyer at the pharmacy who also provided her with a termination letter. On the same day, a majority of Crestview Pharmacy employees resigned.[5] Mr. Charter testified that after the employees resigned, Crestview Pharmacy was "basically at a

---

[5] Of the employees that resigned, Amanda Davey, Claudia Barnett, Kari Waites, Victoria Ballard, Morgan Meeks, Kyndall Barber, and Ellen Stafford—all nominal defendants—resigned without giving notice. *Id.* at 70-73; ECF No. 30 at 16. Pharmacists Brittany McDaniel and Emily Blackmon gave two weeks' notice on April 20, 2023, resigning in May 2023. *Id.*

standstill," ultimately contributing to several providers taking their business elsewhere and requiring Crestview Pharmacy to hire and train new staff. *Id.* at 73. Neither the Densmans nor the employees who resigned had employment contracts with restrictive post-employment covenants and they had not signed any nondisclosure or noncompete agreement.

On April 24, 2023, the Densmans's new competing pharmacy, Crestview City Pharmacy, started "filling prescriptions"—staffed with several of Crestview Pharmacy's former employees. *Id*. at 185. During the evidentiary hearing, Mrs. Densman testified that it was only after she was terminated from Crestview Pharmacy that she initiated contact with providers to discuss the competing pharmacy and formally offered employment to her former coworkers. *Id.* at 156, 179.

**II. Conclusions of Law**

A party seeking a preliminary injunction must demonstrate that: (1) there is a substantial likelihood of success on the merits of the case, (2) the moving party will experience irreparable harm in the absence of an injunction, (3) the injury to the movant outweighs the potential harm that an injunction may cause the defendant, and (4) an injunction would not be adverse to the public interest. *See N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1217 (11th Cir. 2008). It is well

settled that a preliminary injunctions is an "extraordinary and drastic" remedy that should not be granted "unless the movant clearly established the burden of persuasion as to all four elements." *CBS Broad., Inc. v. EchoStar Commc'ns Corp.*, 265 F.3d 1193, 1200 (11th Cir. 2001) (internal marks omitted).  Courts have found that factual conflict "may create sufficient doubt about the probability of plaintiff's success to justify denying a preliminary injunction."  *See Castellano Cosmetic Surgery Ctr., P.A. v. Doyle*, No. 8:21-cv-1088-KKM-CPT, 2021 WL 3188432, at *6 (M.D. Fla. July 28, 2021) (quoting 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948.3 (3d ed. 2021)).

The Plaintiffs ask the Court to enjoin the Densman Defendants[6] from (1) employing former Crestview Pharmacy employees that the Densman Defendants improperly solicited, and (2) soliciting or doing business with the medical providers identified on the Top Providers List.  Plaintiffs argue that they have met the requirements to support an entry of a preliminary injunction based on their claims under the Defend Trade Secret Act ("DTSA"), 18 U.S.C. § 1836, and the Florida Uniform Trade Secret Act ("FUTSA") § 668.02, Fla. Stat., as well as under the common law claims of breach of the duty of loyalty and civil conspiracy.  The

---

[6] Specifically, the Densman Defendants include Crestview City Pharmacy, Jennifer Reshay Densman, and Christopher Neil Densman.

Densman Defendants argue that Plaintiffs have not established a likelihood of success on the merits, irreparable harm, or any of the other requirements to support entry of an injunction. ECF No. 34 at 3.

### *1. Solicitation of Employees*

Florida law recognizes a duty of loyalty to an employer. *See Fish v. Adams*, 401 So. 2d 843, 845 (Fla. 5th DCA 1981). Generally, absent a noncompete agreement, an employee does not run afoul of this duty by planning to open a competing business or by proceeding to compete with the previous employer through the rival company after terminating his or her employment. *See Harllee v. Prof'l Serv. Indus., Inc.*, 619 So. 2d 298, 300 (Fla. 3d DCA 1992); *Ins. Field Servs., Inc. v. White & White Inspect. and Audit Serv., Inc.*, 384 So. 2d 303, 307-08 (Fla. 5th DCA 1980). Acts consisting of mere preparation to open a competing business ordinarily do not breach a duty of loyalty. *See Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp.2d 1134, 1149 (M.D. Fla. 2007). However, an "employee may not engage in disloyal acts in anticipation of his future competition, such as . . . soliciting customers and other employees prior to the end of his employment." *Fish*, 401 So. 2d at 845; *see also Terry Roberts Site Work, Inc. v. Unemployment Appeals Com'n*, 908 So. 2d 592, 593 (Fla. 5th DCA 2005) ("An

employer has a right to expect that his or her employee will not solicit fellow employees on the job to join the employee's competing business venture.").

Although the Densmans were not bound by a nonsolicitation agreement, as employees they nonetheless owed Plaintiffs a duty of loyalty and under that duty they could not solicit employees to leave Crestview Pharmacy while they were still employed there. While the record does reflect that there was a mass resignation of employees on April 20, 2023, there is no evidence the Densmans encouraged or enticed those employees to resign through the lure of a job offer with the competing pharmacy. Mrs. Densman testified that although it was well known that she and her husband were going to open a competing pharmacy, she made no formal offers to anyone and actively solicited no one while employeed at Crestview Pharamcy. Plaintiffs called only one witness at the hearing to contradict this testimony, laboratory technician April Koski who remains employed by Plaintiffs; however, Ms. Koski testified that it was merely "implied" that the employees would go to work for the Densmans. She did not state that the Densmans offered her a contract of employment or even expressly offer her (or anyone else for that matter) a position at the new pharmacy. In fact, no one testified that employees were expressly solicited. At this point, there is at most a question of fact, albeit a weak one on this record, of any solicitation of employees by the Densmans while they were still

Page 12 of 20

employed by Plaintiffs. *See Castellano Cosmetic Surgery Ctr., P.A.*, 2021 WL 3188432, at *6 (stating that factual conflict "may create sufficient doubt about the probability of plaintiff's success to justify denying a preliminary injunction" (quoting 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948.3 (3d ed. 2021)). It seems just as plausible that the mass employee resignation on April 20 was the result of the surprise site visit by management and a company lawyer for the purpose of firing two long-term management-level employees (the Densmans) without notice.[7] While the evidence on a fully developed record may well be different from the record established at the emergency hearing, the Court finds that Plaintiffs are not substantially likely to prevail on the merits of this record.[8]

Even assuming a likelihood of success on the merits, Plaintiffs have not established that they will experience irreparable harm unless the Court enjoins the

---

[7] As noted, Mr. Densman was fired by telephone because he was not at the pharmacy when management and the lawyer arrived. Mr. Henderson was placed on administrative leave via a phone call.

[8] Similarly, Plaintiffs have not demonstrated a substantial likelihood of success on the merits of their civil conspiracy claim because the record at this time does not show that the "Defendants jointly were engaged in a conspiracy to undermine Crestview Pharmacy's business, while actively employed at Crestview Pharmacy to unfairly secure . . . employees[.]" ECF No. 30 at 30.

CASE NO. 3:23-cv-08993-MCR-HTC

Page 13 of 20

Densmans from employing former Crestview Pharmacy employees. None of the former employees signed a noncompete agreement and Mr. Charter testified that Crestview Pharmacy was in need of restaffing the pharmacy even before the Densmans left. Nothing about the employment of these individuals itself suggests that they possessed special knowledge or training that would cause Plaintiffs irreparable harm, and this has not been argued in any event. *See generally Dyer v. Pioneer Concepts, Inc.*, 667 So. 2d 961, 964-65 (Fla. 2d DCA 1996) (stating that an employer cannot enjoin a "former employee from employment with a competitor unless the former employer has proved that the employment itself causes irreparable injury"). Here, the resulting business losses associated with employees leaving the business are compensable monetarily. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.").

Therefore, Plaintiffs have not met their burden of persuasion for obtaining injunctive relief because they have not demonstrated a substantial likelihood of success on their duty of loyalty and civil conspiracy claims, in which they allege that the Densman Defendants solicited Crestview Pharmacy employees while still employed. Regardless, they have also not shown irreparable injury.

CASE NO. 3:23-cv-08993-MCR-HTC

## *2. Top Providers List*

Plaintiffs claim the Top Providers List is a trade secret and that Mrs. Densman misappropriated it in violation of the DTSA, 18 U.S.C. § 1836, and the FUTSA, § 668.02, Fla. Stat. For a DTSA misappropriation claim to succeed, Plaintiffs must show that they: "(i) 'possessed information of independent economic value' that (a) 'was lawfully owned by' the plaintiff[s] and (b) for which the plaintiff[s] 'took reasonable measures to keep secret,' and (ii) the defendant[s] 'used and/or disclosed that information,' despite (iii) 'a duty to maintain its secrecy.'" *Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F. Supp. 3d 1285, 1293 (M.D. Fla. 2018) (citations omitted). Similarly, for a FUTSA claim to succeed, Plaintiffs must show that "(1) [they] possessed a 'trade secret' and (2) the secret was misappropriated." *Advantor Sys. Corp. v. DRS Tech. Servs., Inc.*, 678 F. App'x 839, 853 (11th Cir. 2017).[9]

The evidence shows a substantial likelihood of success that the Top Providers List qualifies as a trade secret. The DTSA and FUTSA define trade secrets as "information that derives economic value from not being generally known to others,

---

[9] The Court addresses Plaintiffs' claims under the FUTSA and DTSA together. *Hurry Fam. Revocable Tr. v. Frankel*, No. 8:18-cv-2869-T-33CPT, 2019 WL 6311115, at * 13 (M.D. Fla. Nov. 25, 2019) ("Plaintiffs' claims under [DTSA and FUTSA] require very similar showings, namely, the existence of a trade secret and the defendant's misappropriation of that trade secret.").

the owner of which has taken reasonable measures to keep secret." *Castellano Cosmetic Surgery Ctr., P.A.*, 2021 WL 3188432, at *5; 18 U.S.C. § 1839(3); § 688.002(4), Fla. Stat.  Courts in Florida "have often found that customer lists and their related information constitute protectable trade secrets." *Plouffe v. GEICO Gen. Ins. Co.*, No. 16-25145-CIV, 2017 WL 7796323, at *5 (S.D. Fla. Aug. 8, 2017).  Courts consider whether there was evidence that a customer list "was the product of great expense and effort, [whether] it included information that was confidential and not available from public sources, and [whether] it was distilled from larger lists of potential customers into a list of viable customers for a unique business." *Id.* (citing *East v. Aqua Gaming, Inc.*, 805 So. 2d 932, 934 (Fla. 2d DCA 2001)).  Here, the Plaintiffs presented evidence that the list—consisting of medical provider names and related financial information—provided independent economic value.  Mr. Charter testified that the list showed the providers who wrote the most prescriptions, which was information that was used by the sales team.  ECF No. 29 at 56.  Mr. Charter also testified that this information was not known to the public, competitors, or even to some of Crestview Pharmacy's employees.  *Id.* at 61-62.  Crestview Pharmacy had also taken reasonable measures to maintain secrecy by implementing password-protected systems for this information.  *Id.* at 36, 61-62; *see Hurry Fam. Revocable Tr. v. Frankel*, No. 8:18-CV-2869-CEH-CPT, 2023 WL 23805, at *10 (M.D. Fla.

Jan. 3, 2023) (finding that "Plaintiffs provided sufficient evidence to establish that its customer list was not information capable of being easily ascertained by anyone in that line of business"); *Castellano Cosmetic Surgery Ctr., P.A.*, 2021 WL 3188432, at *6 (finding sufficient evidence to establish that the plaintiffs took reasonable measures to maintain a client email list secret because "not all employees" had access to the client list which was maintained in a password protected computer database).

Regardless, Plaintiffs have not presented sufficient evidence to show that Mrs. Densman misappropriated the Top Providers List. Misappropriation occurs when there is "disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C.A. § 1839(5)(B)(ii)-(iii); *see Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1297 (11th Cir. 2018) ("'Misappropriation,' generally, is defined as the acquisition of a secret 'by someone who knows or has reason to know that the secret is improperly obtained or who used improper means to obtain it.'" citing *Advantor*, 678 F. App'x at 583 and Fla. Stat. § 688.002(2)). The record contains no evidence that Mrs. Densman used or disclosed the Top

Providers List, precluding a finding that Plaintiffs are substantially likely to prevail on the merits of their trade secret misappropriation claim. While Ms. Densman admits that she accidentally forwarded the Top Providers List to her personal account, Mrs. Densman testified that she only sent the email to herself, she sent it by mistake and deleted the email as soon as she discovered it, and she no longer possesses the Top Providers List. Although there are cases indicating that emailing a confidential customer list to a personal account demonstrates misappropriation, those cases are coupled with facts showing that the email was willful or deceitful and not accidental as here. *Cf. All Star Recruiting Locums, LLC v. Ivy Staffing Sols, LLC*, 21-CV-62221, 2022 WL 2340997 at *12 (S.D. Fla. Apr. 8, 2022) ("find[ing] that there is a substantial likelihood that Plaintiff will succeed on its misappropriation claims" because the former employees sent a trade secret list to their personal email and to someone else). Additionally, even though Mrs. Densman contacted some of the providers after she was terminated by Crestview Pharmacy, she testified that in doing so she did not use the Top Providers List and noted that the list did not even contain the providers' contact information. According to Ms. Densman, because of her decade-long tenure at Crestview Pharmacy, she already had the providers' contact information and had established long-standing relationships with many of them. Additionally, according to Ms. Densman, several

of the providers contacted her. The Plaintiffs did not present evidence to refute Mrs. Densman's testimony on any account. Notably, not one prescribing provider testified that Mrs. Densman had solicited them or that there were reasons besides prescription fulfillment delays that caused them to send their prescriptions elsewhere.

While courts have found that sending an email containing trade secrets prior to voluntary resigning from an employer may result in an inference of misappropriation, the Court finds that such an inference is not justified on this record; the undersigned is free to reject such an inference at this stage and credit Mrs. Densman's uncontradicted testimony. *Id.* at *12 (finding "evidence of misappropriation" from the "timing" of emails containing trade secrets "sent just before" the employee voluntarily resigned); *AutoNation, Inc. v. Mulleavey*, No. 19-60833-CIV, 2019 WL 4693575, at *4 (S.D. Fla. Aug. 22, 2019) (finding evidence of misappropriation when defendant forward a customer list to both his personal email account and "to a competitor right before accepting employment with that competitor"). In any event, her unrefuted testimony at the very least creates a significant question of fact that precludes Plaintiffs from establishing a substantial likelihood of success on the merits of this claim, although the Court recognizes that a more fully developed record may change this. *See Castellano Cosmetic Surgery*

*Ctr., P.A.*, 2021 WL 3188432, at *6 ("In many cases the existence of a factual conflict . . . may create sufficient doubt about the probability of plaintiff's success to justify denying a preliminary injunction." (quoting 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948.3 (3d ed. 2021)).[10]

Plaintiffs have not met their burden of persuasion for obtaining injunctive relief because they have not demonstrated a substantial likelihood of success on the merits of their trade secrets misappropriation and duty of loyalty claims alleging that Mrs. Densman unfairly solicited business with providers identified on the Top Providers List. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (stating that a "preliminary injunction is an extraordinary and drastic remedy") (citation omitted).

---

[10] For similar reasons, the Court finds that factual disputes concerning whether Mrs. Densman used the Top Providers List preclude a finding that Plaintiffs are substantially likely to prevail on the merits of their duty of loyalty claim. *See ACR Electronics, Inc. v. DME Corp.*, No. 11-62591-CIV-MARRA, 2012 WL 13005955, at *14 (S.D. Fla. Oct. 31, 2012) (stating that when "an employee *uses* confidential information gained during his employment in breach of his duty of loyalty, it is appropriate to preliminarily enjoin the employee from further use of that information").

CASE NO. 3:23-cv-08993-MCR-HTC

Accordingly, the Motion for Preliminary Injunction, ECF No. 1-5, is **DENIED**.  Pursuant to the terms of the previously entered Initial Scheduling Order, ECF No. 41, the parties' Rule 26 Joint Report is due by July 10, 2023.

**DONE AND ORDERED** this 16th day of June 2023.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

CASE NO. 3:23-cv-08993-MCR-HTC